UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| THE ESTATE OF KIMBERLY KERTZ, and PAULA KERTZ, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No.: 25-cv-160-JSD ) |
| CITY OF CRYSTAL CITY, *et. al.* | ) ) |
| Defendants. | ) ) |

### DEFENDANTS GREG MAGUIRE AND ANDY DIXON'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

COME NOW, Defendants Greg Maguire and Andy Dixon (collectively referred to as the "Paramedic Defendants"), by and through undersigned counsel, and for their Memorandum in Support of their Motion to Dismiss Plaintiffs' Second Amended Complaint, the Paramedic Defendants state as follows:

#### INTRODUCTION

Plaintiffs', Estate of Kimberly Kertz and Paula Kertz ("Plaintiffs"), Second Amended Complaint ("Complaint") should be dismissed as the Paramedic Defendants are entitled to qualified immunity. There is insufficiently clear precedent that demonstrates that their conduct violated Decedent Kimberly Kertz's ("Decedent") alleged constitutional right. The facts alleged also do not demonstrate that the Paramedic Defendants were deliberately indifferent to an objectively serious medical condition. Lastly, Plaintiffs have not sufficiently alleged facts that the Paramedic Defendants conspired to violate Decedent Kimberly Kertz's constitutional rights and/or that an underlying violation of a constitutional right occurred. Therefore, the Paramedic

1

Defendants are entitled to qualified immunity, Count VI fails to state a claim, and Plaintiffs' Complaint should be dismissed as to the Paramedic Defendants.

## BACKGROUND

Plaintiffs filed suit against the Paramedic Defendants, the City of Crystal City, and various employees of the Crystal City jail. (*See generally* Doc. No. 49). Plaintiffs allege that the Paramedic Defendants were employed by the Joachim-Plattin Ambulance District, a political subdivision located in Jefferson County, MO, and organized pursuant to RSMo. § 190.105. (Id. at ¶¶ 17-18). Plaintiffs further allege that their actions were performed within the course and scope of their employment and that they are sued in their individual capacities. (Id.)

Plaintiffs' claims arise out of Decedent Kimberly Kertz ("Decedent") being taken into custody on February 7, 2022, and her subsequent detention at the Crystal City jail from just after midnight on February 8, 2022, until she was found unresponsive in her jail cell on February 9, 2022 at 7:48 PM. (Id. at ¶¶ 25, 32, 61 & 200-201). Plaintiffs allege that, Decedent was a pre-trial detainee. (Id. at ¶ 33). During that time, Plaintiffs assert that Decedent was suffering from heroin withdrawal. (*See generally* Id.)

Prior to the Paramedic Defendants' arrival at the Crystal City jail, Plaintiffs allege that Decedent could be seen experiencing involuntary muscle twitches and movements, that she was tossing and turning and lying in the fetal position, she experienced balance issues, and she was not eating. (Id. at ¶¶ 65-69, 75 & 77). At approximately 5:09 PM, Decedent asked for help from the jail staff, and at approximately 6:40 PM Decedent yelled for help. (Id. at ¶¶ 71 & 76).

The Paramedic Defendants responded to the Crystal City jail at approximately 7:30 PM. (Id. at ¶ 79). Upon their arrival Defendant Link informed the Paramedic Defendants that

"[Decedent] got arrested in Herky last night, so she's been here twenty-four hours . . . Truth is, she's just Dope Sick." (Id. at ¶ 84) (emphasis removed).

During the Paramedic Defendants' evaluation of Decedent which occurred in the jail's booking room and beginning at 7:43 PM in the presence of the Crystal City jail's staff, Decedent stated that her chest "hurt all over" and that she had been experiencing these symptoms since earlier that day and that her "chest is hurting worse." (Id. at ¶¶ 85-87). She also stated that her stomach was upset. (Id. at ¶ 92). During this encounter, Decedent's demeanor was quiet and cooperative, and she appeared to be staring off into the distance, rocking herself, and yawning. (Id. at ¶ 88). Decedent informed the Paramedic Defendants that she was a daily user of heroin, and that over the last year she had been snorting or ingesting heroin as opposed to injecting it. (Id. at ¶ 89). She also informed them that she had not had any heroin for two days. (Id. at ¶ 23).

The Paramedic Defendants then proceeded to obtain Decedent's vital signs including blood pressure and heart rhythm. (Id. at ¶ 90-91). Decedent's blood pressure was stated to be 170/100, but Maguire found that "everything looks good on your heart, . . . ." (Id. at ¶ 92-93).

The Paramedic Defendants also asked if Decedent had withdrawn from heroin before, where she stated yes and that "this is worse." (Id. at ¶¶ 95-96). In response, Maguire stated:

> Well, doesn't make things any better being in a jail where you can't move around and at least …[inaudible] . . . it only makes things worse. . . Okay?  Your vital signs are stable. Your blood pressure is up a little bit, which doesn't surprise me. . . .

(Id. at ¶ 97).

Maguire then stated to the jail staff present that "[s]he checks out alright . . . Okay? . . . "You good with that?" to which Defendant Link allegedly responded "Yeah, I'm good with that." (Id. at ¶¶ 97-98). The Paramedic Defendants examination of Decedent allegedly took five minutes and thirty seconds. (Id. at ¶ 2).

3

After Decedent exited the booking room where she briefly lost and regained her balance, Defendant Link stated to Maguire *"[i]f she continues to act up, I'll just take her to the hospital later."* (Id. at ¶ 100) (emphasis added). Maguire then allegedly responded "Oh yeah, you might have to . . . uh, for a fit for confinement, just for your own piece of mind . . . Like I said before, it's a pretty good chance that it's just because she hasn't had anything." (Id. at ¶ 101).

Subsequent to the Paramedic Defendants' departure, Decedent allegedly requested help again at 2:20 AM and 2:36 AM of February 9, 2022. (Id. at ¶ 120). She also continued to toss and turn, she was curled up in her blanket and was seen kicking it off due to apparent chills and sweats. (Id. at ¶ 123). Plaintiffs also allege that Decedent was dehydrated due to her inability to drink water in her cell. (Id. at ¶¶ 125-126 & 132). By 1:00 PM, Decedent was lying on the floor of her cell. (Id. at ¶ 127). Decedent then began experiencing multiple vomiting and dry heaving episodes where it is alleged that in a five-hour period that Decedent vomited twenty-four times. (Id. at ¶ 129-131, 133-138 & 140-143). She also reportedly asked for help again from the jail staff, and was suffering from "obvious mental and physical distress and [wa]s in a visibly weakened physical state." (Id. at ¶ 132 & 144). At approximately 5:30 PM, Decedent informed Defendant Bennet that she could not get up to go to court to appear before a judge because she was too sick even though it could result in her release. (Id. at ¶¶ 150-153). By 6:28 PM, Decedent was allegedly too weak to stand, and by 7:07 PM was vomiting again. (Id. at ¶¶ 162-163). Throughout February 9, 2022, Decedent requested help from the jail staff on multiple additional occasions. (Id. at ¶¶ 132, 143 & 164). At 7:31 PM, Decedent began convulsing and then went limp. (Id. at ¶ 167). At approximately 7:48 PM, Decedent was found unresponsive, and she never regained consciousness despite life saving efforts. (Id. at ¶¶ 170-171). Since the Paramedic Defendants' departure twenty-four hours earlier, Plaintiffs allege that no one attended

to Decedents' deteriorating medical condition. (Id. at ¶¶ 121, 128, 149, 156-158, 160-161, & 166).

Count V, entitled "Denial of Medical Care," and Count VI, entitled "Conspiracy to Violate Kimberly Kertz' Civil Rights," are alleged against the Paramedic Defendants pursuant to the Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983. (Id. at Count V & Count VI). In Count V, Plaintiffs allege that:

> Defendants became aware on February 8, 2022, that Kimberly Kertz was suffering from a serious, obvious medical condition. Both Defendants were professionally aware that her blood pressure was 170/100, and complaints of severe acute chest pain. As EMTs, and their training, their default response should have been to transport her to the local hospital for emergency treatment.
>
> Each of the individual Defendants failed and refused to transport Kimberly Kertz to a medical facility for treatment, resulting in the lost chance of survival for Kimberly Kertz.
>
> As a direct and proximate result of these Defendants' conduct, Kimberly Kertz suffered excruciating physical pain, extreme emotional distress, and helplessness for over forty-three (43) hours until her death . . . .
>
> The conduct of these Defendants was committed with deliberate indifference to, and reckless disregard to the Constitutional rights of Kimberly Kertz and her physical safety . . . .

(Id. at ¶¶ 196-199). Count VI further alleges that the Paramedic Defendants' conduct constituted deliberate indifference when "Defendants conspired together and reached a mutual understanding to withhold medical treatment from Kimberly Kertz . . . ." (Id. at ¶¶ 202 & 204).

## STANDARD OF REVIEW

A Rule 12(b)(6) motion is designed to test the legal sufficiency of a complaint to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (internal citation omitted). Under this rule, "the

5

factual allegations in the complaint are accepted as true and viewed most favorably to the plaintiff." *Dadd v. Anoka Cnty.*, 827 F.3d 749, 754 (8th Cir. 2016). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not pass muster. *Iqbal*, 556 U.S. at 678. As such, and in support of any type of cause of action, a plaintiff is required to plead more than a mere "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. This tenet is especially true in cases involving governmental entities given the potential application of an immunity defense. *Id.* at 685. In the context of a motion to dismiss on the basis of qualified immunity, "defendants must show that they are entitled to qualified immunity on the face of the complaint." *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005) (citing *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir. 1996) ("qualified immunity is an affirmative defense," and "it will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint.")).

### RELEVANT AUTHORITY

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (citation omitted). Courts analyze a pretrial detainee's Section 1983 claim for deliberate indifference to a serious medical need under the Due Process Clause of the Fourteenth Amendment, as opposed to the Eighth Amendment which applies to convicted inmates. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007).

6

Public officials "are protected from § 1983 suits by the affirmative defense of qualified immunity." *Water v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019) (internal citations omitted). Qualified immunity shields public officials from civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Under this analysis, there are two factors a court must consider: (1) whether the facts alleged show that the public official's conduct violated a constitutional right; and (2) whether the constitutional right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "Qualified immunity is appropriate only if no reasonable factfinder could answer yes to both of these questions." *Hess v. Ables*, 714 F.3d 1048, 1051 (8th Cir. 2013) (quoting *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009)).

With respect to the second element, the Court must determine "whether that right was clearly established at the time of the defendant's alleged misconduct." *Winslow v. Smith*, 696 F.3d 716, 731 (8th Cir. 2012) (internal quotations omitted). In this regard, a plaintiff bears the burden of showing more than a general violation of a constitutional right. *Rokusek v. Jansen*, 899 F.3d 544, 547 (8th Cir. 2018) ("The Supreme Court has warned that we must not 'define clearly established law at a high level of generality . . . .'") (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011). Instead, a plaintiff needs to show that the right was sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right'" and "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The U.S. Supreme Court has specified that a clearly established law at issue "must be particularized to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017). "This means that the right in

7

question must be construed fairly narrowly and that facts in the present case must align with facts in precedent." *Harmon v. Preferred Family Healthcare, Inc.*, 125 F.4th 874, 884 (8th Cir. 2025) (citing *Rusness v. Becker Cnty.*, 31 F.4th 606, 615 (8th Cir. 2022)). However, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640 (1987) (internal citations omitted).

This "clearly established" standard protects the balance between vindication of constitutional rights and in public officials' effective performance of their duties by ensuring that officials can "reasonably . . . anticipate when their conduct may give rise to liability for damages." *Anderson*, 483 U.S. at 639 (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)). In other words, an official is entitled to "fair warning" that his conduct will infringe on another's federal rights at the time the official chooses to act." *See Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002); *see also Anderson*, 483 U.S. at 640 (". . . in the light of pre-existing law the unlawfulness must be apparent."). "Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *Id.* at 79 (citations omitted).

To establish a deliberate indifference to a medical need for the purposes of a constitutional rights violation, a plaintiff "must show that: (1) [s]he suffered from an objectively serious medical need, and (2) defendants knew of the need yet deliberately disregarded it." *Humes v. Jones*, 109 F.4th 1112, 1116 (8th Cir. 2024) (quoting *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Thus, the claims at issue require both an objective and subjective component. *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009). For the objective component, a medical need is objectively serious if it "has been diagnosed by a physician as requiring

treatment or [if it is] so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018). With respect to the subjective component and "[i]n order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the [individuals] health." *Vaughn*, 557 F.3d at 908. "This onerous standard requires a showing more than negligence, more even than gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the [individual]." *Thompson v. King*, 730 F.3d 742, 750 (8th Cir. 2013). In this context, "[d]eliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed, but . . . [it] requires more than mere disagreement with treatment decisions." *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009). For instance, "[n]egligent misdiagnosis does not create a cognizable claim under § 1983," *Cannon v. Dehner*, 112 F.4th 580, 587 (8th Cir. 2024) (citing *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009), and "showing that another [medical provider] might have ordered different tests and treatment does not show deliberate indifference," *Dulany v. Carnahan*, 132 F.3d 1234, 1242 (8th Cir. 1997) (citing *Noll v. Petrovsky,* 828 F.2d 461, 462 (8th Cir.1987)). Lastly, "[d]eliberate indifference must be measured by the official's knowledge at the time in question, not by 'hindsight's perfect vision.'" *Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011) (quoting *Lenz v. Wade,* 490 F.3d 991, 995 (8th Cir.2007)).

For a conspiracy claim under § 1983, a plaintiff must establish: "(1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act

9

injured the plaintiff." *Burton v. St. Louis Bd. of Police Com'rs*, 731 F.3d 784, 798 (8th Cir. 2013) (internal citations omitted). "A claim of conspiracy must be supported by factual allegations sufficient to suggest that the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding and meeting of the minds." *Id.* Thus, a plaintiff must "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Bonenberger v. St. Louis Metro. Police Dep't*, 810 F.3d 1103, 1109 (8th Cir. 2016). Qualified immunity also bars such claims when a constitutional violation is absent. *Ryno v. City of Waynesville*, 58 F.4th 995, 1006 (8th Cir. 2023).

### ARGUMENT

The Paramedic Defendants are entitled to qualified immunity in light of their role with their employer. In regard to this defense, there is insufficiently clear precedent which proscribed their conduct under the facts alleged. Plaintiffs' Complaint similarly fails to demonstrate that the Paramedic Defendants were deliberately indifferent to an objectively serious medical condition at the time they evaluated Decedent. In addition, Plaintiffs' Count VI for conspiracy should be dismissed due to the fact that there was no underlying violation of a constitutional right, and because Plaintiffs failed to allege facts that demonstrate that the Paramedic Defendants had an agreement to violate Decedent's constitutional right. For these reasons, the Paramedic Defendants are entitled to qualified immunity and Plaintiffs' Complaint should be dismissed.

As a preliminary matter, the Paramedic Defendants are presumptively entitled to qualified immunity on the face of the Complaint owing to the fact that their conduct was performed through their employment with the "Joachim-Plattin Ambulance District, a political subdivision located in Jefferson County, MO, and organized pursuant to RSMo. § 190.105."

10

The Paramedic Defendants are further entitled to qualified immunity given that their alleged conduct did not violate a clearly established constitutional right under the circumstances at issue. While general authority exists that an individual has a right to have their serious medical needs addressed without deliberate indifference, there does not exist clearly defined precedent fairly narrowly tailored to the facts of the case that demonstrates the impropriety of the Paramedic Defendants' alleged conduct in responding to Decedent's heroin withdrawal.

Here, the Paramedic Defendants were summoned by the Crystal City jail staff to evaluate Decedent's medical condition on February 8, 2022. They were not employed by the jail, they did not remain onsite following their evaluation, and they were not called again to further evaluate Decedent as her condition changed. Decedent's physical symptoms prior to the time the Paramedic Defendants were called included Decedent tossing and turning and lying in the fetal position, experiencing balance issues, and not eating. The Paramedic Defendants obtained a history from Decedent where the Paramedic Defendants learned that Decedent was a heroin user, that she had not had heroin for two days, and that she was experiencing chest pain and some nausea. Decedent's demeanor during the Paramedic Defendant's evaluation was calm and cooperative. She was also able to walk in and out of the booking area without third-party assistance. The Paramedic Defendants also performed objective testing to evaluate Decedent's condition which revealed that Decedent's blood pressure was elevated, but otherwise her heart condition "look[ed] good." Overall, the Paramedic Defendants found that Decedent's condition was stable despite her elevated blood pressure. Based on their findings, the Paramedic Defendants questioned the jail staff if they were satisfied with their assessment, to which the jail staff responded that they were. This is crucial because Decedent was in the custody and control of the Crytal City jail staff. Notwithstanding the fact that the Paramedic Defendants considered

Decedent to have been stable at the time of their evaluation and had been told by the jail staff that they was satisfied with their assessment, the Crystal City jail staff also allegedly told the Paramedic Defendants that "[i]f she continues to act up, I'll just take her to the hospital later." As such, the Paramedic Defendants received assurances from the Crystal City jail staff that Decedent would be taken to the hospital if her symptoms continued or otherwise deteriorated. Furthermore, the Paramedic Defendants recommended to the jail staff that Decedent may require a fit for confinement check in order for a higher level of care to determine if Decedent was fit to remain in her jail cell. Thus, the Paramedic Defendants responded to and evaluated Decedent's medical condition where they determined that she was stable, the jail staff were satisfied with their assessment, the Paramedic Defendants suggested to the jail staff that Decedent may require a fit for confinement check notwithstanding their evaluation, and the Paramedic Defendants had assurances from the jail staff that Decedent would be taken to the hospital if her condition persisted. In light of the facts at issue and the nature of Plaintiffs' claims, there is insufficiently clear precedent showing that the Paramedic Defendants' conduct was inappropriate.

Further, Decedent's medical condition was not overtly serious based on her symptoms at the time the Paramedic Defendants evaluated Decedent, and where they found her condition to be stable.[1] As such, Decedent's condition at the time of their evaluation was not objectively serious which would implicate a possible violation of a constitutional right.[2] *See Quintana v. Santa Fe Cnty. Bd. of Commissioners*, 973 F.3d 1022, 1029 (10th Cir. 2020) ("No Tenth Circuit

---

[1] The lack of an objectively serious medical condition at the time the Paramedic Defendants evaluated Decedent should be contrasted with Decedent's medical condition after the Paramedic Defendants' departure from the Crystal City jail. There, Decedent's medical condition allegedly deteriorated which included changes in her physical and cognitive state and her repeated vomiting which were not present at the time of the Paramedic Defendants' evaluation.

[2] The Paramedic Defendants note that they are not physicians. An objectively serious medical condition can exist "if it has been diagnosed by a physician as requiring treatment." This did not occur here under the facts alleged. Otherwise, an objectively serious medical condition exists "if it is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."

12

authorities have concluded that heroin withdrawal presents a "sufficiently serious" medical need."); *Burton v. Downey*, 805 F.3d 776, 786 (7th Cir. 2015) (concluding no objectively serious medical need regarding withdrawals, even if painful); *Shraver v. Brimfield Township*, 2014 WL 75096908 at *9-10 (N.D. Ohio Oct. 31, 2014) ("the Sixth Circuit observed, while discontinuing the use of narcotics can produce dangerous withdrawal symptoms, '[t]he intensity of withdrawal cannot always be predicted accurately' due to 'many factors including the physiology, psychology and neurochemistry of the individual using the substance'" and "in sum, the weight of authority suggests that the Estate has not established that Shaver's withdrawal was an objectively serious medical condition.") (collecting cases); *but see Grote v. Kenton Cnty., Kentucky*, 85 F.4th 397, 406 (6th Cir. 2023) (citing Sixth Circuit cases).

Moreover, the facts alleged do not demonstrate that the Paramedic Defendants were deliberately indifferent to Decedent's medical condition even if it is assumed that her heroin withdrawal at the time of the Paramedic Defendants' evaluation was an objectively serious medical condition. Again, the Paramedic Defendants responded to Decedent's medical condition, they evaluated her condition, and after assessing Decedent's condition, determined that she was stable. While the accuracy and completeness of this assessment may be disputed by Plaintiffs, the negligent misdiagnosis of a medical condition does not support a claim under Section 1983. The Paramedic Defendants also recommended that Decedent may need a fit for confinement check and they were told that if Decedent's condition continued that Decedent would be taken to the hospital. While Plaintiffs allege that "[the Paramedic Defendants'] default response should have been to transport her to the local hospital for emergency treatment," the Paramedic Defendants had reasonable assurances that Decedent would be taken to the hospital if her condition persisted. In this regard, a difference in opinion concerning a treatment course does not

13

support a claim for deliberate indifference. While the propriety of their conduct as far as further treatment is concerned may be disputed, negligence or even gross negligence is insufficient for establishing deliberate indifference. Here, the Paramedic Defendants' conduct as alleged did not rise to the level of criminal recklessness to support a claim of deliberate indifference.

As for Plaintiffs' conspiracy claim, Plaintiffs have not pled facts which would demonstrate that the Paramedic Defendants had a meeting of the minds to violate Decedent's constitutional rights. To this point, the Paramedic Defendants were told by the jail staff that if Decedent's condition persisted that she would be taken to the hospital which was made in connection with the Paramedic Defendants' recommendation that Decedent may require a fit for confinement check. Thus, there could be no meeting of the minds concerning the alleged denial of medical care given that the Paramedic Defendants were told that Decedent's condition would be attended to if it continued. They also suggested that Decedent may require further assessment, which was not done. As such, there is an obvious disconnect between the Paramedic Defendants' understanding of the care and/or attention Decedent would receive and the ultimate occurrences at issue such that a meeting of the minds cannot be shown under the facts alleged. Finally, and based on the arguments above, there was no underlying violation of a constitutional right relating to the Paramedic Defendants' alleged conduct that can support a conspiracy claim.

## CONCLUSION

In light of the foregoing, the Paramedic Defendants are entitled to qualified immunity. Further, there is insufficiently clear precedent that proscribed the Paramedic Defendants conduct under the circumstances at issue. The allegations at issue also do not demonstrate that Decedent was suffering from an objectively serious medical condition at the time the Paramedic Defendants evaluated her, nor do they demonstrate that the Paramedic Defendants were

14

deliberately indifferent to Decedent's medical condition even if her condition at the time of their evaluation is considered objectively serious. Lastly, Plaintiffs have failed to allege facts in support of her conspiracy claim in Count VI. For these reasons, the Paramedic Defendants are entitled to qualified immunity, and Plaintiffs' Complaint should be dismissed.

WHEREFORE, Defendants Andy Dixon and Greg Maguire respectfully request that the Court GRANT their Motion to Dismiss Plaintiff's Second Amended Complaint, and award any and all further relief that the Court deems just and warranted under the circumstances.

BROWN & JAMES, P.C.

/s/ Bryce G. Pfalzgraf
Bryce G. Pfalzgraf, MO #68781
bpfalzgraf@bjpc.com
Steven H. Schwartz, MO #36436
sschwartz@bjpc.com
800 Market Street, 11th Floor
St. Louis, Missouri 63101
Phone: (314) 421-3400
Fax: (314) 421-3128

*Attorneys for Defendants Greg Maguire and Andy Dixon*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been filed electronically with the Clerk of Court on the **11 day of June, 2025** to be served by operation of the Court's electronic filing system upon all counsel of record. Parties may access this filing through the Court's electronic filing system.

                                                  BROWN & JAMES, P.C.

                                                  /s/ Bryce G. Pfalzgraf
                                                  Bryce G. Pfalzgraf, MO #68781
                                                  bpfalzgraf@bjpc.com
                                                  Steven H. Schwartz, MO #36436
                                                  sschwartz@bjpc.com
                                                  800 Market Street, 11th Floor
                                                  St. Louis, Missouri 63101
                                                  Phone: (314) 421-3400
                                                  Fax: (314) 421-3128

                                                  *Attorneys for Defendants Greg Maguire and*
                                                  *Andy Dixon*

BGP/SHS:
32144422.1