UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THE ESTATE OF KIMBERLY KERTZ, AND PAULA KARTZ, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | Case No.: 4:25-CV-00160-JSD |
| CITY OF CRYSTAL CITY, ET AL, | ) ) | |
| Defendants. | ) ) | |

## *CRYSTAL CITY DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT*

COME NOW Crystal City, Missouri ("City"); Edward Robinson; Kyle Boyer; James Link; Curtis Pullen; Timothy Bennett; Jeff Price; Kristina Long; Kathy Forester; and Brittany Meyer (collectively, "Defendants"),[1] and for their Memorandum in Support of Their Motion to Dismiss Plaintiffs' Second Amended Complaint pursuant to Fed. R. Civ. P. 8, 12(b)(1), and 12(b)(6), state:

## *I.    INTRODUCTION*

On February 7, 2025, the Estate of Kimberly Kertz and Paula Kertz ("Plaintiffs") filed their Complaint against Defendants regarding a death in custody of Kimberly Dawn Kertz ("Decedent") on February 9, 2022. Doc. 1 ¶ 25. On March 3, 2025, Plaintiffs filed an Amended Complaint. Doc. 17. On June 2, 2025, Plaintiffs were granted leave to file their Second Amended Complaint, which contained the following counts (omitting the last two counts against EMS Defendants):

I.   Unlawful Seizure (Fourteenth Amendments against City);
II.  Denial of Medical Care (Fourteenth Amendments against Individual Defendants);
III. Conspiracy to Violate Civil Rights (Eighth and Fourteenth Amendments against Individual Defendants); and
IV. Failure to Intercede (Fourteenth Amendments against Individual Defendants).

---

[1] All individual defendants are sued in their individual capacity and are referred to as the "Individual Defendants."

Doc. 49. For the reasons stated, *infra*, Plaintiffs' claims should be dismissed for failure to state a claim and based on qualified immunity (regarding the individual Defendants).

## II.    STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (internal citation omitted). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co.*, Inc., 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Holman v. Ali Indus., LLC*, 4:22-CV-4133-NKL, 2023 WL 1438752, at *2 (W.D. Mo. Feb. 1, 2023) (internal citations omitted) (same standard for facial attack regarding subject matter jurisdiction). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (internal citation omitted).[2] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal,* 556 U.S. at 678.  In support of any type of cause of action, a plaintiff is required to plead more than a mere "unadorned, the-defendant-unlawfully harmed-me accusation." *Id.* at 678. This tenet is especially true in cases involving government entities given the potential application of an immunity defense. *Id.* at 685.

## III.    ARGUMENT

---

[2] This Court considers the complaint, matters of public record, orders, materials embraced by the complaint (including videos), and exhibits attached to the complaint under Rule 12(b)(6) (*Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *see also Ching v. City of Minneapolis*, 73 F.4th 617, 621 (8th Cir. 2023)) and need not "adopt the plaintiff's version of facts if they are 'blatantly contradict[ed]' by video evidence" (*Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019) (internal citation omitted)).

Defendants address entitlement to dismissal by each count in the order raised by Plaintiffs.

**A. Plaintiffs' claims in Count I (42 U.S.C. § 1983 for Fourteenth Amendment unlawful seizure) against the City should be dismissed as Plaintiffs have failed to sufficiently state standing and a claim upon which relief may be granted.**

Plaintiffs have purported to allege the City violated Decedent's Fourteenth Amendment rights in that it maintained a "a custom and practice of having no policy or protocol for confined citizens experiencing serious medical conditions," did not employ medically trained personnel; designated no one to be a decision-maker in urgent situations at the jail; and maintained such a custom in the face of obvious needs violations of the Constitution which would result in the denial of healthcare. Doc. 49, ¶¶ 173–74.

Plaintiff has alleged Decedent's "death was only caused because she was denied professional medical care." *Id.* at 24. The Estate of Kimberly Kertz ("Estate") lacks standing to sue, as Plaintiff is alleging the alleged denial of medical treatment caused the death of Decedent. *See Andrews v. Neer*, 253 F.3d 1052, 1056–57 (8th Cir. 2001).

The City "cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1259 (8th Cir. 2010) (internal citation and quotations omitted). With respect to Plaintiffs' claims that the City did not employ medically trained personnel, there is no such constitutional requirement that such employment is mandated.[3] For the reasons stated, *infra*, Section III.B., there was no clearly established right violated at the time of the subject incident. Further, for lack of an underlying constitutional violation, Plaintiff's *Monell* claim fails. *See*, *e.g.*, *Mitchell v. Kirchmeier*, 28 F.4th 888, 902 (8th Cir. 2022).

---

[3] An additional note regarding the police officers is explained in *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014), regarding the State of Missouri and its training program.

3

Accordingly, Count I should be dismissed and the Estate lacks standing to raise such claims.

**B. Plaintiffs' claims in Count II (42 U.S.C. § 1983 for Fourteenth Amendment denial of medical care against the Individual Defendants) should be dismissed as Plaintiffs have failed to sufficiently state standing and for failure to state a claim upon which relief may be granted.**

As the Eighth Circuit has recently summarized.

> Qualified immunity shields a police officer from suit unless his conduct violated a clearly established right of the plaintiff. A plaintiff bringing a claim under 42 U.S.C. § 1983 must show that the officer violated a constitutional right, and that the right was clearly established at the time of the violation. A right is clearly established only if any reasonable officer would understand that what he is doing violates that right. Existing law must have placed the constitutionality of the officer's conduct beyond debate.

*Buschmann v. Kansas City Bd. of Police Commissioners through Dean*, 76 F.4th 1081, 1084 (8th Cir. 2023) (internal citations omitted). Qualified immunity is immunity from suit, rather than a defense to liability, and the entitlement to such immunity "is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526–27 (1985). The Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

As the Eighth Circuit has summarized:

> We analyze Jones's deliberate indifference claims against Grant and Dixon under the Fourteenth Amendment's due process clause, Poemoceah v. Morton County, 117 F.4th 1049, 1055 (8th Cir. 2024), relying on Fourteenth and Eighth Amendment cases alike, Hott v. Hennepin County, 260 F.3d 901, 905 (8th Cir. 2001). "A plaintiff claiming deliberate indifference must establish objective and subjective components." Thompson v. King, 730 F.3d 742, 746 (8th Cir. 2013). "The objective component requires a plaintiff to demonstrate an objectively serious medical need," while "[t]he subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." McRaven v. Sanders, 577 F.3d 974, 980 (8th Cir. 2009) (quoting Vaughn v. Gray, 557 F.3d 904, 908 (8th Cir. 2009)). This latter component requires the official to "be aware of facts from which the inference could be drawn that a substantial risk of serious

4

harm exists, and ... draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). However, "the district court can infer knowledge if the risk was obvious." <u>Letterman v. Does</u>, 789 F.3d 856, 862 (8th Cir. 2015) (collecting cases).

*Jones v. Faulkner Cnty., Arkansas*, 131 F.4th 869, 874 (8th Cir. 2025).

"[T]he Constitution does not require detention facilities to provide perfect, the best obtainable, or even very good medical care; rather, it requires the provision of adequate medical care. Because society does not expect that prisoners will have unqualified access to health care, [a]s long as [the deliberate indifference threshold] is not crossed ... doctors remain free to exercise their independent medical judgment.

*Luna v. Fowler*, 4:22-CV-04048-SOH-BAB, 2025 WL 1318818, at *7 (W.D. Ark. Mar. 31, 2025), report and recommendation adopted, 4:22-CV-04048, 2025 WL 1314112 (W.D. Ark. May 6, 2025) (internal quotations and citations omitted). An inmate "must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (internal citation and quotations omitted); *Jones*, 131 F.4th at 876 (8th Cir. 2025) ("We have noted that prison officials lacking medical expertise are entitled to rely on the opinions of medical staff regarding inmate diagnosis.") (internal quotations and citation omitted).

The Individual Defendants are entitled to qualified immunity regarding Count II and Plaintiffs[4] have failed to state a claim upon which relief may be granted against all Defendants. Plaintiffs alleged EMS was called to the jail for Decedent and arrived at approximately 7:30 p.m. on February 8, 2022. Doc. 49, ¶¶ 78–79. Plaintiffs alleged EMS evaluated her (*id.* at 79–102) but take issue with the treatment decisions of EMS (*id.* at 103–15). For example, Plaintiff claims

---

[4] For the same reasons stated, supra, Section III.A., the Estate lack standing to sue as Plaintiff has alleged the subject conduct caused Decedent's death. In addition, the law was not clearly established on February 8–9, 2022, that any alleged violation of the Fourteenth Amendment causing the death of an individual violated the rights of the Estate. Accordingly, qualified immunity also bars the Estate's claims in Count II.

Officer Pullen, Sgt. Link, Paramedic McGuire, and EMT Dixon denied Decedent access to clinical evaluation and treatment. The video clearly shows medical personnel evaluating Decedent, arriving at a professional determination, and reliance upon that determination. Doc. 30-2, Ex. C. Plaintiffs' disagreement with the evaluation and any reliance by any Individual Defendant on the evaluation cannot serve as the basis of a violation of any clearly established Fourteenth Amendment right as of February 8–9, 2022.

Jail personnel are entitled to rely on the evaluation of the EMS Defendants. *See Garner v. Doe 1*, 4:24-CV-00300 SPM, 2024 WL 2381837, at *9 (E.D. Mo. May 23, 2024) ("Additionally, '[p]rison officials lacking medical expertise are entitled to rely on the opinions of medical staff regarding inmate diagnosis and the decision of whether to refer the inmate to outside doctors or dentists.' *Holden v. Hirner*, 663 F.3d 336,343 (8th Cir. 2011). More to the point, '[p]rison officials cannot substitute their judgment for a medical professional's prescription.' *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002). Finally, the Eighth Circuit has held that '[d]eliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct.' *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted).").

With respect to withdrawals associated with vomiting and diarrhea, high blood pressure, and chest pain *where Decedent was evaluated by emergency EMS professionals* (Doc. 49, ¶¶ 23, 79–115), the law was not clearly established on February 8–9, 2022, that such symptoms in light of professional evaluation constituted an objectively serious medical need. *See Quintana v. Santa Fe Cnty. Bd. of Commissioners*, 973 F.3d 1022, 1029 (10th Cir. 2020) ("No Tenth Circuit authorities have concluded that heroin withdrawal presents a "sufficiently serious" medical need."); *Burton v. Downey*, 805 F.3d 776, 786 (7th Cir. 2015) (concluding no objectively serious

medical need regarding withdrawals, even if painful); *but see Grote v. Kenton Cnty., Kentucky*, 85 F.4th 397, 406 (6th Cir. 2023) (citing Sixth Circuit cases). Accordingly, there is no controlling authority or any robust consensus of cases of persuasive authority showing that on February 8–9, 2022, an objectively serious medical need was present, including without limitation to each and every Defendant based on each and every shift.

However, even assuming, *arguendo*, heroin withdrawal constitutes an objectively serious medical need, Plaintiffs have not sufficiently alleged the Individual Defendants actually knew of the risk and knew the conduct was inappropriate in light of the risk where the EMS Defendants evaluated Decedent. Plaintiffs have alleged each of the Individual Defendants were aware she was suffering from a serious, obvious medical condition (Doc. 49, ¶ 180), but they have failed to plausibly (under *Iqbal,* 556 U.S. at 678) allege that, based on the assessment of EMS, such alleged actions or inactions rose to the level of violating a clearly established right on February 8–9, 2022.

Plaintiff's Addendum A purports to set forth facts. Defendants refer the Court to Exhibits B and C to Defendants' Motion to Dismiss, previously provided to the Court and used by Defendants in this Memorandum in Support, previously Doc. 30-2 and Doc. 30-3 respectively, to show what may have been perceived by the Individual Defendants. The issue is that Plaintiffs must plausibly state a claim against Defendants, and where the video depicts events concerning facts alleged, that the Court interpret such matters "in the light depicted by the videotape. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007); *see also Ching as Tr. for Jordan v. City of Minneapolis*, 73 F.4th 617, 621 (8th Cir. 2023). Plaintiffs attempt to cast the facts in a light indicating a deliberate indifference to a serious medical need regarding the time Plaintiff enters the jail and up until 7:30 p.m. on February 8, 2022 (when EMS comes to the jail). Such summoning of medical personnel, as explained above, is significant with respect to qualified immunity and Plaintiffs' claims.

Plaintiffs do not allege any of the Individual Defendants have superior medical knowledge to the EMS Defendants, and there is no clearly established law as of February 8–9, 2022, that hailing an ambulance / emergency medical personnel constituted a deliberate indifference to a serious medical need given the standard of review and the video.

Plaintiff concedes Link and Pullen inform the incoming staff that JPAD responded "to evaluate Kimberly for chest pains the night before." Doc. 49-1, ¶ 67. Plaintiff contended Decedent's condition deteriorated, but relies upon what the video shows. The video shows Plaintiff drank water over a dozen times while in jail, despite Plaintiffs' contention to the contrary.[5] Group Doc. 30-2, Ex. B, 2-8 pt. 2, 4:35:30, 6:31:08; 2-8 pt. 3, 4:07:00; 2-9 pt. 1, 2:52:00, 4:31:00, 4:51:00, 6:40:00, 7:32:00; 2-9 pt. 2, 5:00, 1:02:00, 2:30:00, 3:13:00, 5:19:00, 6:47:00; 2-9 p.3, 17:40:00. Plaintiffs contended that Decedent was "visibly lethargic, constantly tossing, turning, curling up under the blanket and then getting hot, kicking it off and then getting cold and pulling it back over her again. . ." Doc. 49-1, ¶ 75. However, these symptoms were all present, as is apparent from the video, *before* EMS evaluated Decedent. See Group Doc. 30-2, Ex. B. The video shows Decedent first vomits around 1:35 p.m. on February 9, 2022 (*see* Group Doc. 30-2, Ex. B, 2-9 p.2 4:22). However, Plaintiffs fail to allege, given the facts shown by the video, a violation of any clearly established law.

On point is the analysis by the Eighth Circuit in *Ivey v. Audrain County, Missouri*:

> At oral argument Ivey's father identified *McRaven v. Sanders*, 577 F.3d 974 (8th Cir. 2009) as a case that shows the officers violated Ivey's clearly established constitutional rights. There, officers arrested someone who admitted taking several drugs and who exhibited poor coordination, slurred speech, a flushed face, droopy eyelids, and a low pulse, blood pressure, and temperature. Once the arrestee entered a holding cell, he moved only once in five hours, during which time a nurse examined him and concluded, without knowing he had taken drugs, that he was

---

[5] Doc. 49-1, ¶ 75 ("Kimberly was thirsty and dehydrated from her inability to consume any meaningful amounts of fluids.").

merely sleeping off alcohol. The arrestee died at the end of that five-hour period. *Id.* at 978–79. We denied qualified immunity to jail personnel in that case because they relied on the nurse's opinion that the arrestee need not be hospitalized when they knew that opinion was based on inaccurate information. *Id.* at 981–82.

The situation the officers faced here was materially different. The arrestee in *McRaven* was, as the court described him, "incapacitated" and therefore presumably unable to communicate his needs or express his distress. Ivey, on the other hand, was conscious and able to communicate. In fact, he told the officers that he did not want medical assistance and raised various complaints to the nurse who checked on him. So even assuming the officers knew Ivey had asthma or was withdrawing from drugs, the record shows Ivey affirmatively declined their offers to assist him with those difficulties. Ivey's symptoms were also different from the ones exhibited in *McRaven*. Though vomiting may indicate a serious medical need, we imagine that happens commonly in a jail that houses people charged with driving under the influence. *Cf. Thompson v. King*, 730 F.3d 742, 748 (8th Cir. 2013). As for his having defecated on himself while in jail, we are mindful that he also defecated on himself at the time of arrest, and yet an emergency room still deemed him fit for confinement. Perhaps the most serious symptom Ivey displayed was the "seizure-like" movement, but it's unclear whether Ivey had an actual seizure, something else, or nothing at all; in any event, he indicated to the officers when they asked him if he needed medical assistance that all was well, and it's not beyond debate that the officers violated the constitution when they took him at his word.

In short, we do not think that *McRaven* shows that the officers here violated clearly established law and were thus plainly incompetent or knowing violators of the law. *See Wallace*, 881 F.3d at 1060; *cf. Krout*, 583 F.3d at 569–70. And since Ivey's father offers no other "controlling authority or a robust consensus of cases of persuasive authority" governing the situation the officers faced here, *Lane v. Nading*, 927 F.3d 1018, 1022 (8th Cir. 2019), or convinced us that we are dealing with an "obvious" constitutional violation, *see Kisela*, 138 S. Ct at 1153, we conclude they are entitled to qualified immunity.

968 F.3d 845, 849–50 (8th Cir. 2020).

This factual scenario alleged by Plaintiffs, but with all facts shown by the video viewed in a light portrayed by the video, does not show a violation of a clearly established right under the Fourteenth Amendment on February 8–9, 2022. Rather than concealing from medical personnel information regarding Decedent and drug use (*see McRaven*, *supra*), EMS was aware:

- Her chest was hurting with sharp pain, Doc. 30-3, Ex. C, 19:43:55.

- Breathing deep made it worse. *Id.* at 19:44:15.

- She uses heroin every day and last used it two days ago, and that she snorts it. *Id.* at 19:44:45.

- Of her vitals. *Id.* at ≈ 19:46:25.

- Everything looked good regarding her heart. *Id.* at 19:47:20.

- This was consistent with heroin withdrawals, Decedent claimed this was worse, vital signs were stable, but blood pressure was up a little bit, which did not surprise EMS. *Id.* at 19:47:55.

- Decedent "checks out alright." *Id.* at 19:48:20.

EMS found her fit to remain in the jail. That Decedent, assuming *arguendo* Plaintiffs' allegations that "officers knew she was withdrawing from an opiate addiction [sic]" (Doc. 49, introductory paragraph), and that Decedent "exhibited common symptoms of severe opiate withdrawal" (Doc. 49-1, ¶ 91) including vomiting, does not make a failure to call EMS after already being found fit by EMS to remain in jail with the previous symptoms shown to be a violation of a clearly established right as of February 8–9, 2022. Like in *Ivey*, vomiting took place and the officers allegedly knew Decedent was withdrawing from drugs but was assessed by medical professionals to be fit to be in jail. *See supra* (though Decedent, here, did was not alleged to have defecated on herself).

Accordingly, this Court should dismiss Counts II for failure to state a claim and based on qualified immunity.

**C. Plaintiffs' claims in Count III (42 U.S.C. § 1983 for Fourteenth Amendment conspiracy to violate constitutional rights against the Individual Defendants) should be dismissed due to qualified immunity, as Plaintiffs have failed to sufficiently state standing, and for failure to state a claim upon which relief may be granted.**

10

As a district court has summarized:

> A conspiracy claim under 42 U.S.C. § 1983 requires a plaintiff to establish: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured the plaintiff. A claim of conspiracy must be supported by factual allegations sufficient to suggest that the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding and meeting of the minds.

*Childers v. Does*, 2024 WL 2337729, at *2–3 (E.D. Ark. Apr. 30, 2024), *report and recommendation adopted sub nom.* 2024 WL 2328033 (E.D. Ark. May 22, 2024) (internal quotations and citations omitted). Plaintiffs must "allege with particularity and specifically demonstrate with material facts the defendants reached an agreement." *Bonenberger v. St. Louis Metro. Police Dep't*, 810 F.3d 1103, 1109 (8th Cir. 2016). Plaintiffs have failed to allege such an agreement or meeting of the minds regarding an unlawful objective. The question, "Are you good with that?" (Doc. 49, ¶ 110; Doc. 30-3, Ex. C, Video of JPAD assessment) is by no means a meeting of the minds regarding those present during the evaluation, let alone for every other Defendant. The meeting of the minds must be to deprive someone of an individual's rights. To find that law enforcement being "good with" an EMS assessment constitutes a conspiracy capable of violating a pre-trial detainee's Fourteenth Amendment right was not clearly established on February 8, 2022, and is contradicted by precedent establishing law enforcement may rely on the medical determinations of medical professionals. *See supra*.

Also, qualified immunity bars such claims for lack of any underlying constitutional violation. *See Ryno v. City of Waynesville*, 58 F.4th 995, 1006 (8th Cir. 2023).

As stated above, the Estate lacks standing as Plaintiffs alleged the actions caused or contributed to cause Decedent's death.

11

Further, the Individual Defendants are entitled to qualified immunity as the law was not clearly established that the City could conspire with and among its own agents. *Faulk v. City of St. Louis*, Missouri, 30 F.4th 739, 750 (8th Cir. 2022).

Accordingly, this Court should dismiss Count III.

**D. Plaintiffs' claims in Count IV (42 U.S.C. § 1983 for Fourteenth Amendment failure to intercede against the Individual Defendants) should be dismissed due to qualified immunity, as Plaintiffs have failed to sufficiently state standing, and for failure to state a claim upon which relief may be granted.**

"As of 2012, the Eighth Circuit had not recognized a duty to intervene to prevent constitutional violations other than the use of excessive force." *Irons v. Neske*, 4:21 CV 293 RWS, 2021 WL 4191614, at *6 (E.D. Mo. Sept. 15, 2021) (citing *see Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012)); *see also Aunhkhotep v. Kopfensteiner*, 4:23 CV 540 RWS, 2025 WL 40757, at *9 (E.D. Mo. Jan. 7, 2025) (no clearly established law as of April 6, 2023). Plaintiffs have not alleged any excessive force was used. Accordingly, the Individual Defendants are entitled to qualified immunity, Plaintiffs have failed to state a claim upon which relief may be granted, and the Estate lacks standing as Plaintiffs have alleged the conduct caused or contributed to cause Decedent's death.

## IV.    CONCLUSION

WHEREFORE, Defendants respectfully request that this Court enter an Order dismissing Plaintiffs' Second Amended Complaint against Defendants and for such further relief consistent with the above, and what other relief this Court deems just and proper.

/s/ Robert T. Plunkert

Robert T. Plunkert  #62064MO
PITZER SNODGRASS, P.C.
Attorney for Defendants City of Crystal City,
Missouri; Edward "Eddie" Robinson
(individually); Kyle Boyer (individually);
James Link (individually); Curtis Pullen
(individually); Timothy Bennett (individually);
Jeff Price (individually); Kristina Long
(individually); Kathy Forester (individually);
and Brittany Meyer (individually).
100 South Fourth Street, Suite 400
St. Louis, Missouri 63102-1821
(314) 421-5545
Email: plunkert@pspclaw.com

I hereby certify that a copy of the foregoing filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following or U.S. mail for parties not registered with CM/ECF, on this 11th day of June, 2025:

Larry A. Bagsby
THE BAGSBY LAW FIRM, LLC
119 South Main Street
St. Charles, Missouri 63301
Phone: 636-244-5595
larrybagsby@aol.com
*Attorney for Plaintiffs*

Karie M. Pennington
LAW OFFICE OF KARIE PENNINGTON, LLC
7095 Metropolitan Blvd., Suite D2
Barnhart, Missouri 63012
Phone: 314-681-9000
Karie@lawyerup314.com
*Attorney for Plaintiffs*

Steven H. Schwartz
Bryce G. Pfalzgraf
BROWN & JAMES, P.C.
800 Market Street, 11th Floor
St. Louis, Missouri 63101
Phone: (314) 421-3400
Fax: (314) 421-3128
sschwartz@bjpc.com
bpfalzgraf@bjpc.com
*Attorneys for Defendants Greg Maguire and Andy Dixon*

/s/ Phillip B. Schatz