UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THE ESTATE OF KIMBERLY KERTZ, AND PAULA KARTZ, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No.: 4:25-CV-00160-JSD |
| CITY OF CRYSTAL CITY, ET AL, | ) ) | |
| Defendants. | ) ) | |

## *CRYSTAL CITY DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF NEW, SUPPLEMENTAL AUTHORITY PERTAINING TO DEFENDANTS' SEPARATE MOTIONS TO DISMISS*

COME NOW Crystal City, Missouri ("City"); Edward Robinson; Kyle Boyer; James Link; Curtis Pullen; Timothy Bennett; Jeff Price; Kristina Long; Kathy Forester; and Brittany Meyer (collectively, "Defendants"),[1] and for their Response to Plaintiffs' Notice of New, Supplemental Authority Pertaining to Defendants' Separate Motions to Dismiss, and state:

On August 18, 2025, Plaintiffs submitted the above-referenced notice (Doc. 62) arguing a new Eighth Circuit case directly addressed the issues raised in the pending motions to dismiss regarding qualified immunity. *See* Doc. 62; *see also Troupe v. Young*, 143 F.4th 955 (8th Cir. Jul. 11, 2025). Defendants limit their Response to address Plaintiffs' contentions in this regard.

Plaintiffs have claimed Defendants relied on *Jones v. Minnesota Department of Corrections*, 512 F.3d 478 (8th Cir. 2008), without citing where Defendants purportedly did so. Defendants have not so relied.

---

[1] All individual defendants are sued in their individual capacity and are referred to as the "Individual Defendants."

Regardless, in *Troupe*, a mother alleged deliberate indifference to a serious medical need under 42 U.S.C. § 1983 pertaining to her son's death from leukemia (undiagnosed before his death). *Troupe*, 143 F.4th at 961. The Court noted the correctional officers observed deteriorating conditions and discussed symptoms, such as "frequent vomiting, hearing loss, dizziness, a decreased level of physical activity, difficulty walking, need for a wheelchair, extreme weakness rendering him nearly bedridden, headaches, and visible weight loss." *Id.* at 970. The son was a pretrial detainee at a jail "between April 2018 and February 2019." *Id.* at 961. As his condition deteriorated in "early February 2019," several events took place displaying such symptoms detailed in the *Troupe* opinion, including a practical nurse responding on February 18, 2019, where the son reported headaches, dizziness, and hearing loss. *Id.* at 962. The nurse was also informed he was vomiting. *Id.* However, the nurse only reported the symptoms as a headache and discounted the son's vomiting. *Id.* "[The son] was never taken to the infirmary and was never seen by any other medical personnel before he died." *Id.* at 961–63. The son's body was found over ten days later after continuing symptoms (on March 1, 2019), as he had passed away from acute leukemia. *Id.* at 963–64.

The *Troupe* Court stated that "the totality of his symptoms and the sufficient allegation that each of the Correctional Officer Defendants had knowledge of internal discussions related to these symptoms could establish that they had sufficient background knowledge to recognize the objective seriousness of Catchings's condition." *Id.* at 970. Therefore, the *Troupe* plaintiff sufficiently pleaded the objective prong in the analysis.

The *Troupe* Court affirmed dismissal of Mohler and Williams based on qualified immunity pertaining to the subjective prong. *Id.* at 971. The Court noted Mohler had multiple interactions with the son in February 2019, was informed the son was "sick, weak, and vomiting," and

witnessed the son vomiting on February 18, 2019, and reported the vomiting to the nurse. *Id.* at 970. He asked the nurse to schedule a clinic, but the nurse did not follow through with doing so as promised. *Id.* With respect to the other officers and with respect to Williams, the Court noted:

> Troupe alleged that Swims, Beard, and Oliver responded to a report by Williams that Catchings was unresponsive. Swims then knocked on Catchings's door until Catchings lifted his head. Swims briefly conversed with him. Swims, Beard, and Oliver then left without providing Catchings further attention. Troupe has further pleaded that Swims, Beard, and Oliver took no additional actions to assess Catchings's condition or address it despite knowing his deteriorating condition. Like the officers' failure to perform CPR on the collapsed inmate in *Tlamka*, 244 F.3d at 633, these Correctional Officer Defendants' failure to require Catchings to stand or otherwise determine his need for medical assistance, if proven, would be deliberate indifference. Given the officers' alleged knowledge of Catchings's extensive symptoms and worsening conditions, their actions constitute "conduct sufficiently severe to evidence a [constitutional] violation." See id. Thus, they are not entitled to qualified immunity at the pleadings stage.
>
> As to Williams, according to the Complaint, she had several interactions with Catchings during February 2019. During the second week of February, Catchings reported to Williams that he was having trouble hearing, could not walk, and could not eat without vomiting. Williams provided Catchings with a sick call form, which he completed and returned to her while expressing skepticism that anything would happen since his previous requests had obtained no results. On February 28, 2019, Catchings did not stand for count during Williams's rounds. When Williams banged on his cell door and received no response, she contacted Unit Control. Later that same night at approximately 9:00 p.m., Williams attempted to speak with Catchings through his cell door but simply walked away when he did not reply. Finally, at the nightly sign-of-life check in which Williams was required by policy to make all inmates stand, she failed to require Catchings to stand.
>
> Like Mohler, the allegations against Williams do not demonstrate that she deliberately disregarded his medical needs. She responded appropriately several times by providing a sick-call form when requested and contacting Unit Control when Catchings was completely unresponsive. Williams's decisions not to follow up when Catchings did not respond to her at 9:00 p.m. and to not require him to stand at the nightly sign-of-life check are "no cause for commendation." *Jones*, 512 F.3d at 484. But Troupe did not allege that Catchings was unconscious at that point or otherwise unresponsive to justify assignment of reckless disregard for his condition to Williams. *See id.* (holding that "however arguably negligent" the defendant's conduct seemed "in the clear light of hindsight," it did not rise to the level of deliberate indifference (internal quotation marks omitted)). Unlike Swims, Beard, and Oliver, who were responding to a report of unresponsiveness, the alleged interactions (or lack thereof) at 9:00 p.m. and 10:15 p.m. do not amount to

a reckless disregard of Catchings's medical needs, but rather tend to infer negligence, or gross negligence at most. Williams is entitled to qualified immunity.

*Id.* at 971.

Here, with respect to the objective prong, Decedent was not alleged to be "healthy and active" prior to her incarceration, where the son in *Troupe* was alleged to have been for approximately nine months while incarcerated before symptoms began. *Id.* at 961, 969. This matter, rather than in *Troupe*, is accompanied by surveillance showing the condition of Decedent. Defendants have cited cases showing heroin withdrawal was not clearly established to be an objectively serious medical need.

With respect to the subjective prong, *Troupe* indicates Plaintiffs' allegations against the Crystal City Defendants fall even shorter of deliberate indifference to a serious medical need than the mother's allegations against Mohler and Williams. At no point did Defendants turn a blind eye to Decedent when she became unresponsive. Plaintiffs alleged Decedent was at the jail for just over forty-three hours, during which period EMS personnel were summoned. Doc. 43, p. 2. EMS personnel observed signs of heroin withdrawal (reportedly worse) (*id.* at 96) and decided that she would not be transported to a hospital. Defendants have submitted video surveillance, and the only symptom present between the time EMS was alleged to have arrived at 7:30 p.m. on February 8, 2022, and the time she was alleged to be found unresponsive in her cell at approximately 7:48 p.m., on February 9, 2022, was vomiting. Defendants have briefed the reason why the presence of vomiting, under the totality of the circumstances does not raise the allegations to the level of criminal recklessness (as phrased by *Troupe*, 143 F.4th at 970). *See also Ivey v. Audrain County, Missouri*, 968 F.3d 845, 849–50 (8th Cir. 2020); Doc. 54, pp. 8–10. Defendants were entitled to rely on the assessment of EMS, and there remains no case law with similar facts which squarely

4

govern the specific facts at issue in this matter. *See*, *e.g.*, *Kisela v. Hughes*, 584 U.S. 100, 104, 138 (2018).

WHEREFORE, Defendants respectfully request that this Court enter an Order dismissing Plaintiffs' Second Amended Complaint against Defendants and for such further relief consistent with the above, and what other relief this Court deems just and proper.

/s/ Robert T. Plunkert
Robert T. Plunkert  #62064MO
PITZER SNODGRASS, P.C.
Attorney for Defendants City of Crystal City,
Missouri; Edward "Eddie" Robinson
(individually); Kyle Boyer (individually);
James Link (individually); Curtis Pullen
(individually); Timothy Bennett (individually);
Jeff Price (individually); Kristina Long
(individually); Kathy Forester (individually);
and Brittany Meyer (individually).
100 South Fourth Street, Suite 400
St. Louis, Missouri 63102-1821
(314) 421-5545
Email: plunkert@pspclaw.com

I hereby certify that a copy of the foregoing filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following or U.S. mail for parties not registered with CM/ECF, on this 18th day of August, 2025:

Larry A. Bagsby
THE BAGSBY LAW FIRM, LLC
119 South Main Street
St. Charles, Missouri 63301
Phone: 636-244-5595
larrybagsby@aol.com
*Attorney for Plaintiffs*

Karie M. Pennington
LAW OFFICE OF KARIE PENNINGTON, LLC
7095 Metropolitan Blvd., Suite D2
Barnhart, Missouri 63012
Phone: 314-681-9000
Karie@lawyerup314.com
*Attorney for Plaintiffs*

Steven H. Schwartz
Bryce G. Pfalzgraf
BROWN & JAMES, P.C.
800 Market Street, 11th Floor
St. Louis, Missouri 63101
Phone: (314) 421-3400
Fax: (314) 421-3128
sschwartz@bjpc.com
bpfalzgraf@bjpc.com
*Attorneys for Defendants Greg Maguire and Andy Dixon*

/s/ Phillip B. Schatz

6