UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ESTATE OF KIMBERLY KERTZ and        )
                                    )
PAULA KERTZ,                        )
                                    )
        Plaintiffs,                 )
                                    )
    vs.                             )        Case No. 4:25-CV-160 JSD
                                    )
CITY OF CRYSTAL CITY, et al.,       )
                                    )
        Defendants.                 )

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Greg Maguire and Andy Dixon's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 51) and Crystal City Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 53).  These matters are fully briefed and ready for disposition. The Court grants Defendants Greg Maguire and Andy Dixon's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 51) and grants, in part, and denies, in part, Crystal City Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 53).

**BACKGROUND[1]**

Decedent Kimberly Kertz ("Decedent") was taken into custody on February 7, 2022, by the City of Pevely, Missouri. (Second Amended Complaint ("Am. Compl."), ECF No. 49, ¶ 32) Pevely officers released her from custody that same night but notified Crystal City police

---

[1] When considering a Rule 12(b)(6) motion, the Court assumes all of a complaint's factual allegations are true and construes all reasonable inferences in favor of the nonmoving party. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 570 (2007) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 556, n.1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).

because Decedent had two (2) outstanding  warrants for non-payment of traffic fines issued by the Municipal Court of Crystal City, two (2) pending misdemeanors, and a warrant for non-payment of fines for expired license plates. (Am Compl., ¶ 33) She was subsequently detained at the Crystal City jail from just after midnight on February 8, 2022, until she was found unresponsive in her jail cell on February 9, 2022 at 7:48 p.m. (Am. Compl., ¶¶ 25, 32, 61, 170) Decedent, a pretrial detainee, was going through heroin withdrawal, as she had been a daily heroin user but had not had any heroin for two days. (Am. Compl., ¶¶ 23, 89) She was in the Crystal City Jail for just over forty-three (43) hours at the time of her death. (ECF No. 49 at 2) Plaintiffs allege Crystal City Officers did not take any action to determine whether Decedent could be safely detained at the Crystal City Jail. Plaintiffs allege that the video recording of Decedent's cell shows her yelling for help and exhibiting signs of serious medical stress such as involuntary muscle movements, chills, sweats, vomiting bile, and dehydration. (ECF No. 49 at 2)

On the day prior to her death and seventeen (17) hours into her custody at the Crystal City Jail, Joachim Plattin Ambulance District EMTs Greg Maguire and Andy Dixon (hereinafter "EMT Defendants") responded to the Crystal City jail to evaluate Decedent, per her request, at approximately 7:30  p.m. on February 8, 2022. (Am. Compl., ¶ 79) The assessment took place in the booking room and was recorded with audio and video surveillance. (*Id*., ¶ 80) Sergeant Link told the EMTs that Decedent was "dope sick." (*Id*., ¶ 84) EMT Defendants spent five (5) minutes and thirty (30) seconds examining Decedent and checking her vitals. (Am. Coml., ¶ 23; ECF No. 49 at 2) She told EMT Defendants that she felt worse than any prior time she had gone through heroin withdrawal. *Id*. EMT Defendants did an ECG reading and reported that "[e]verything look[ed] good on [her] heart." (Am Comp., ¶ 92) EMT Dixon also reported that Decedent's blood pressure was 170/100. However, EMT Defendants recorded Decedent's blood pressure as

160/90 in the official record. (Am Compl., ¶ 93) EMT Maguire told jail staff present that "[s]he checks out alright . . .  Okay? . . .  "You good with that?" To which Defendant Link allegedly responded, "Yeah, I'm good with that." (Am. Compl., ¶¶ 97-98) After Decedent exited the booking room, Defendant Link said to EMT Maguire, "[i]f she continues to act up, I'll just take her to the hospital later." (Am. Compl., ¶ 100) EMT Maguire responded, "Oh yea, you might have to . . . uh, for a fit for confinement, just for your own piece of mind . . . Like I said before, it's a pretty good chance that it's just because she hasn't had anything [i.e., heroin]." (*Id*., ¶ 101)

Decedent continued to request help throughout the rest of that evening and, by 1:00 p.m., the following day, she was lying on the floor of her cell. (Am. Compl., ¶ 127) During the next five-hour period, Plaintiffs allege that Decedent vomited twenty-four times. (*Id*., ¶¶ 129-131, 133-38, 140-43) Decedent asked for help and, at approximately 5:30 p.m., she told Defendant Bennet that she was too sick to get up to go to court. (*Id*., ¶¶ 150-153) By 6:28 p.m., Decedent was allegedly too weak to stand and was vomiting again at 7:07 p.m. (Id., ¶¶ 162-63) At 7:31 p.m., Decedent began convulsing and went limp. (*Id*., ¶ 167) At approximately 7:48 p.m. on February 9, 2022, Decedent was found unresponsive and never regained consciousness. (*Id*., ¶¶ 170-71) Plaintiffs allege that no one attended to Decedents' deteriorating medical condition since the EMT Defendants departed twenty-four hours earlier. (*Id*., ¶¶ 121, 128, 149, 156-58, 160-61, 166)

Plaintiffs are the Estate of Kimberly Kertz and Paula Kertz. Paula Kertz is the appointed personal representative of the Estate of Kimberly Kertz and the biological mother of Decedent. (Am Compl., ¶ 3) The Estate is filed in Jefferson County, Missouri, Case No.: 22JE-PR00557. *Id.* Plaintiff Paula Kertz brings this action pursuant to R.S. Mo., § 537.080(1), as the biological mother of Decedent and as a member of the class of individuals who are authorized to file a

wrongful death claim. (Am. Compl., ¶ 4) On June 2, 2025, Plaintiffs filed a Second Amended Complaint, alleging claims for:

I.     Unlawful Seizure (Fourteenth Amendment against City);

II.    Denial of Medical Care (Fourteenth Amendment against Individual Defendants);

III.   Conspiracy to Violate Civil Rights (Eighth and Fourteenth Amendments against Individual Defendants); and

IV.    Failure to Intercede (Fourteenth Amendment against Individual Defendants)

On June 11, 2025, Defendants filed their respective motions to dismiss. (ECF Nos. 51, 53)

## STANDARD OF REVIEW

### A.  12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556).  Several principles guide the Court in determining whether a complaint meets the plausibility standard.  The Court must take the plaintiff's factual allegations as true. *Iqbal*, 556 U.S. at 678. "This tenet does not apply, however, to legal conclusions or 'formulaic recitation of the elements of a cause of action'; such allegations may properly be set aside." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047,

1056 (8th Cir. 2018) (citing *Iqbal*, 556 U.S. at 678).  Rather, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## DISCUSSION

I.    **Standing of the Estate[2]**

As an initial matter, Crystal City Defendants argue that The Estate of Kimberly Kertz ("the Estate") lacks standing to sue, as Plaintiffs allege the denial of medical treatment caused the death of Decedent. (ECF No. 54 at 3 (citing *Andrews v. Neer*, 253 F.3d 1052, 1056–57 (8th Cir. 2001)). Defendants maintain that this lawsuit is not an asset of the Estate. (ECF No. 60 at 2 (citing *Olofson v. Olofson*, 625 S.W.3d 419, 430 (Mo. 2021) ("An action involving purely personal issues abates with the death of a party, except where otherwise provided by statute, because the need to redress purely personal wrongs ceases to exist." (cleaned up)).

In response, Plaintiffs contend that the Estate has standing to sue because this lawsuit is an asset of the Estate and estates are established to represent the individual members listed in paragraphs 4 and 5 of the Second Amended Complaint. (ECF No. 59 at 3) Plaintiffs note that they bring this action pursuant to R.S. Mo. 537.080(1) and list the class of members entitled to recover in this suit. *Id*.

---

[2] The Court reviews Defendants' attack on the Estate's standing to sue pursuant to Fed. R. Civ. P. 12(b)(1). In the context of a facial challenge, "all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful [only] if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (in facial attack to subject matter jurisdiction "the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).")).

Under § 1983, state actors who infringe the constitutional rights of an individual are liable "to the party injured." 42 U.S.C. § 1983. Under 42 U.S.C. § 1988(a), when the injured party is deceased, the statute directs parties to state law to determine who is a proper plaintiff, as long as state law is not inconsistent with the Constitution or federal law. *See Robertson v. Wegmann,* 436 U.S. 584, 588–90 (1978). The Missouri wrongful death statute, Mo. Rev. Stat. § 537.080, addresses the survival of injury claims that result in death. *See Wollen v. DePaul Health Ctr.*, 828 S.W.2d 681, 685 (Mo. 1992) ("The language of the survivorship statute and the wrongful death statute are mutually antagonistic. The survivorship statute applies when the injury alleged did *not* cause death, and the wrongful death statute applies when the injury did cause death."); *Andrews v. Neer*, 253 F.3d 1052, 1057-58 (8th Cir. 2001).[3] The wrongful death statute provides that

> [w]henever the death of a person results from any act ... which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who ... would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured, which damages may be sued for: (1) By the spouse or children or the surviving lineal descendants ....

Mo. Rev. Stat. § 537.080. Thus, the Court holds that Missouri law, namely the wrongful death statute, affords a cause of action only to the surviving lineal descendants, not to the Estate. *Id*. Accordingly, the Court dismisses the Estate for lack of standing. *See Sanders v. Ahmed*, 364 S.W.3d 195, 204 (Mo. 2012) ("Wrongful death was, and is, a new statutory cause of action independent of the predicate tort."); *Sullivan v. Carlisle,* 851 S.W.2d 510, 515 (Mo. banc 1993) ("[A] wrongful death claim ... is neither a transmitted right nor a survival right, but is created and

---

[3] Notably, the Missouri survival statute provides that "[c]auses of action for personal injuries, *other than those resulting in death,* ... shall not abate by reason of [the injured party's] death" and it allows the action to survive "to the personal representative of such injured party." Mo. Rev. Stat. § 537.020(1).

vests in the survivors at the moment of death.") (citations omitted); *see also Lawrence v. Beverly Manor,* 273 S.W.3d 525, 528–29 (Mo. banc 2009) ("Wrongful death ... is a cause of action separate from the underlying torts, although it is treated differently for the purposes of venue").

II.    **Crystal City Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 53)**

A.  **Count I against the City**

In the Motion to Dismiss, Defendant the City of Crystal City ("the City") argues that Plaintiffs do not allege the violation of a right that has been clearly established. *See* ECF No. 54 at 3 (citing *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1259 (8th Cir. 2010) (quoting *Szabla v. City of Brooklyn Park,* 486 F.3d 385, 393 (8th Cir.2007) (*en banc*)) ("a municipality 'cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established.'") The City contends that there was no clearly established right to employ medically trained personnel that was violated at the time of the incident. (ECF No. 54 at 3) Finally, the City contends that Plaintiffs' *Monell* claim fails based upon lack of an unconstitutional violation. (ECF No. 54 at 3)

To support their claim for *Monell* liability, Plaintiffs allege the City "has no 'withdrawal protocol' policy, custom or practice, when such a practice and policy is an obvious need, routine and established for jails, and because of that failure, it disregarded known or obvious consequences which would result in municipal employees violating a citizen's constitutional rights. This has been the well-established means of imposing *Monell* liability." (ECF No. 59 at 5) Plaintiffs allege that the City violated the Decedent's Fourteenth Amendment rights because it maintained a "custom and practice of having no policy or protocol for confined citizens experiencing serious medical conditions"; did not employ medically trained personnel; did not

designate anyone to be a decisionmaker in urgent jail situations; and maintained this custom despite it resulting in Constitutional violations based upon denials of healthcare to jail inmates. (Am. Compl., ¶¶ 173-74); *see also* Am. Compl., ¶ 60 ("Crystal City Police Chief Helms, Captain Pruneau and the City … knew in February 2022 that failure to implement a policy, procedure and custom for screening, assessment and observation of inmates exhibiting signs of severe opiate withdrawal and dehydration would create a direct and distinct risk of harm, needless suffering or death to individuals in their custody, care and control."). Plaintiffs claim that the City's actions and inactions were deliberately indifferent to and with reckless disregard of her Constitutional rights. (Am. Compl., ¶ 176) Plaintiffs further assert that their claim in Count I for denial of medical care has been a clearly established right for five (5) decades. (ECF No. 59 at 4 (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)) That is, the Fourteenth Amendment protects pretrial detainees from officials' "deliberate indifference to their serious medical needs." *Estelle*, 429 U.S. at 104. Thus, Plaintiffs maintain that they state a claim for relief of a clearly established right. (ECF No. 59 at 4)

A local governing body such as the City can be sued directly under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). "Under *Monell*'s holding a municipal entity is liable under § 1983 only if a municipal 'policy or custom' caused a plaintiff to be deprived of a federal right." *Los Angeles County v. Humphries*, 562 U.S. 29, 32–33 (2010); *White v. City of St. Louis*, No. 4:25-CV-00031-MTS, 2025 WL 1360703, at *1 (E.D. Mo. May 9, 2025). "Such liability may attach if the constitutional violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise.'" *Cox v. Walker*, No. 4:19-CV-02764-RLW, 2019 WL 6525600, at *3 (E.D. Mo. Dec. 4, 2019) (quoting *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018)); *see also Marsh v. Phelps*

*Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"); *Gray v. City of St. Louis*, No. 4:18-CV-01678-SEP, 2025 WL 961739, at *3 (E.D. Mo. Mar. 31, 2025); *Robbins v. City of Des Moines*, 984 F.3d 673, 681-82 (8th Cir. 2021). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). On a failure-to-train theory, a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference...." *Id*. at 62 (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 409 (1997)); *Gray v. City of St. Louis*, No. 4:18-CV-01678-SEP, 2025 WL 961739, at *7 (E.D. Mo. Mar. 31, 2025).

The Court finds that Plaintiffs have alleged that the lack of a policy or custom "itself violated federal law, or directed or authorized the deprivation of federal rights." *Bd. of Cnty. Com'rs of Bryan Cnty. Okl. v. Brown*, 520 U.S. 397, 406 (1997); *Starks v. St. Louis Cnty*., No. 4:21-CV-435 RLW, 2024 WL 940410, at *17 (E.D. Mo. Mar. 5, 2024). Plaintiffs allege that "[t]he failure to adopt, enforce, and maintain a policy to respond to medical emergencies of inmates resulted in a violation against [Decedent's] Constitutional rights, as protected by the Fourteenth Amendment." (Am. Compl., ¶ 174) Indeed, Plaintiffs allege that Decedent "had a blood pressure reading of 170/100, and, complaints of sharp and severe chest pain, which would have triggered a medical emergency under a "Withdrawal Protocol". (Am. Compl., ¶ 175) Given that the case is at its infancy, the Court finds that Plaintiffs adequately allege denial of medical care and denies Plaintiffs' Motion to Dismiss Count I against the City. [4]

---

[4] Although the City only moves to dismiss based upon the lack of a clearly established right violated at the time of the subject incident, the Court notes that there is an issue as to whether

### B. Count II against Individual Defendants Edward Robinson, Kyle Boyer, James Link, Curtis Pullen Timothy Bennett, Jeff Price, Kristina Long, Kathy Forester, and Brittany Meyer

Plaintiffs allege that, on February 8 and February 9, 2022, Decedent was suffering from a serious, obvious medical condition (heroin withdrawal); Individual Defendants were required to provide medical care to Decedent by transporting her to a medical facility; and Individual Defendants failed and refused to transport to Decedent to a medical facility for treatment, resulting in her "lost chance of survival[.]" (Am. Compl., ¶¶ 180-81) Plaintiffs assert that Individual Defendants' conduct was committed with deliberate indifference to and reckless disregard of Decedent's Constitutional rights. (Am. Compl., ¶ 183)

Defendants assert that they are entitled to qualified immunity as to Count II and that Plaintiffs have failed to state a claim upon which relief may be granted against them. Initially, Individual Defendants argue that "there is no controlling authority or any robust consensus of cases of persuasive authority showing that on February 8–9, 2022, an objectively serious medical need was present, including without limitation to each and every Individual Defendant based on each and every shift." (ECF No. 54 at 6-7) Further, Defendants contend that they are entitled to qualified immunity as to Count II because they relied upon the evaluations of the Emergency Medical Technicians ("EMTs") and their reliance on medical professionals' evaluations cannot serve as the basis of a violation of any clearly established Fourteenth Amendment right as of

---

Plaintiffs allege sufficient facts to support a plausible claim for a "a continuing, widespread, persistent pattern" of such conduct, outside of Decedent's personal experiences over a two-day span. *Troupe v. Young*, 143 F.4th 955, 974 (8th Cir. 2025) (citing *Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 829 (8th Cir. 2013)); *see also Ulrich v. Pope Cnty*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights based upon deficient supervision and training practices); *Cox v. Walker*, No. 4:19-CV-02764-RLW, 2019 WL 6525600, at *4 (E.D. Mo. Dec. 4, 2019) (same).

February 8-9, 2022. (ECF No. 54 at 6) Defendants note that video from that time "clearly shows medical personnel evaluating Decedent, arriving at a professional determination, and reliance upon that determination." (ECF No. 54 at 6 (citing ECF No. 30-2, Ex. C)). Defendants assert that "[j]ail personnel are entitled to rely on the evaluation of the EM[T] Defendants." (ECF No. 54 at 6 (citing *Garner v. Doe 1*, No. 4:24-CV-00300 SPM, 2024 WL 2381837, at *9 (E.D. Mo. May 23, 2024) ("[p]rison officials lacking medical expertise are entitled to rely on the opinions of medical staff regarding inmate diagnosis and the decision of whether to refer the inmate to outside doctors or dentists."); *Holden v. Hirner,* 663 F.3d 336,343 (8th Cir. 2011) (same). Defendants further argue that, even if "heroin withdrawal constitutes an objectively serious medical need," Plaintiffs fail to state a claim upon which relief can be granted because they "have not sufficiently alleged the Individual Defendants actually knew of the risk and knew the conduct was inappropriate in light of the risk where EM[T] Defendants evaluated Decedent." (ECF No. 54 at 7) Defendants argue that Plaintiffs did not plausibly allege that, "based on the assessment of [EMTs], such alleged actions or inactions rose to the level of violating a clearly established right on February 8-9, 2022." (ECF No. 54 at 7) Defendants reference jail video which shows Decedent drinking water, contrary to Plaintiffs' claims. (ECF No. 54 at 8) Further, Defendants maintain that the video shows Decedent's symptoms were largely present prior to her evaluation by EMT Defendants and that Decedent first vomited around 1:35pm on February 9, 2022. *Id*. Defendants argue that, based upon this video footage, Plaintiffs have not alleged a violation of any clearly established law.

Defendants further rely upon *Ivey v. Audrain County, Missouri*, 968 F.3d 845, 849–50 (8th Cir. 2020), where the Eighth Circuit reversed and remanded the case on a denial summary judgment, finding the prison guards were entitled to qualified immunity after the death of an

arrestee who refused treatment. (ECF No. 54 at 9) In *Ivey*, the Court relied upon video recordings showing the arrestee's symptoms, including vomiting, defecating on himself, and seizure-like symptoms, to determine the officers had not violated a clearly established right under the Fourteenth Amendment of the arrestee. *Id*. at 849-850.[5] Defendants argue that, like in *Ivey*, Decedent's vomiting and withdrawal were known by officers but she was assessed and medical professionals who found Decedent fit for confinement. (ECF No. 54 at 10) Accordingly, Defendants assert that this Court should dismiss Count II for failure to state a claim and based upon qualified immunity. *Id*.

In response, Plaintiffs argue that Individual Defendants are not entitled to qualified immunity because their actions constituted "intentional conduct" that is not protected by qualified immunity. (ECF No. 59 at 6) Specifically, Plaintiffs contend that the Decedent was being held at the Crystal City Jail because she failed to pay traffic fines and appear for a misdemeanor case, although she was released the day prior on a felony charge of possession of methamphetamines. (ECF No. 59 at 6) In addition, Plaintiffs assert that "no 'fit for confinement' was ever conducted by a medical professional" despite Decedent being in obvious distress and, after being warned by EMTs to watch her in case her condition worsened, the dispatchers and jailers failed to respond to her cries for "help". (ECF No. 59 at 6) Moreover, Plaintiffs assert that Individual Defendants had actual knowledge of her serious medical condition. That is, Plaintiffs allege that all the individual officers, employees and dispatchers of Crystal City were specifically told Decedent had consumed heroin prior to her arrest in Herculaneum; that she was exhibiting signs of withdrawal; making complaints of severe chest pain; exhibiting high blood pressure;

---

[5] The Court notes, however, that *Ivey* was a summary judgment case where the court identified the question presented as whether the law clearly establishes what officers must do when a detainee declines medical assistance. *Id*. at 849.

vomiting bright colored mucus; had diarrhea; sleeping agitated; requesting help through the audio and video feed to dispatchers and jailers; and was not eating. (ECF No. 59 at 8)

Claims of pretrial detainees are evaluated under Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *Hartsfield v. Colburn*, 371 F.3d 454, 456–57 (8th Cir. 2004) (citing *Ervin v. Busby*, 992 F.2d 147, 150 (8th Cir. 1993)). But pretrial detainees are "entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment." *Id.* (citing *Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 906 (8th Cir. 1999)). Courts are to apply the deliberate indifference standard to a pretrial detainee's claims of inadequate medical care. *Id. See also Davis v. Hall*, 992 F.2d 151, 152–53 (8th Cir. 1993) (per curiam). "This standard involves both objective and subjective analyses." *Troupe*, 143 F.4th at 968 (citing *Hall v. Ramsey Cnty.*, 801 F.3d 912, 920 (8th Cir. 2015)). To meet the objective component, Plaintiffs must plead facts sufficient to demonstrate that Decedent "suffered from an objectively serious medical need." *Jackson*, 756 F.3d at 1065. "To be objectively serious, a medical need must have been diagnosed by a physician as requiring treatment or must be so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* (internal quotation marks omitted). The subjective component requires Plaintiffs to plead facts sufficient to show that the Individual Defendants each subjectively knew of Decedent's serious medical need and deliberately disregarded that need. *Id.* "This showing requires a mental state akin to criminal recklessness." *Id.* (internal quotation marks omitted).

"A public official is entitled to qualified immunity unless: (1) their conduct violated a constitutional right, *and* (2) that right was clearly established." *Davis v. Buchanan Cnty.*, 11 F.4th 604, 623 (8th Cir. 2021); *Troupe v. Young*, 143 F.4th 955, 967 (8th Cir. 2025). "Qualified immunity is 'appropriate where no reasonable fact finder could conclude that the facts when

viewed in a light most favorable to the plaintiff show that the officers' conduct violated a clearly established constitutional right.'" *Id.* (quoting *Williams v. Mannis*, 889 F.3d 926, 931 (8th Cir. 2018)).

The proper standard for addressing qualified immunity at the Rule 12(b)(6) stage is whether "immunity is established on the face of the complaint[.]" *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir.1996), *cert. denied,* 519 U.S. 1149 (1997); *Schatz Fam. ex rel. Schatz v. Gierer*, 346 F.3d 1157, 1159 (8th Cir. 2003). "Courts may ask only whether the facts as alleged plausibly state a claim and whether that claim asserts a violation of a clearly established right." *Payne v. Britten*, 749 F.3d 697, 702 (8th Cir. 2014); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")).

The fact that officers noted that Decedent was "dope sick" does not establish that she was suffering from a serious medical condition. *See Starks v. St. Louis Cnty.*, No. 4:21-CV-435 RLW, 2024 WL 940410, at *9 (E.D. Mo. Mar. 5, 2024) ("[T]the Court declines to find that every individual withdrawing from drugs is suffering from a serious medical condition."). That said, withdrawal symptoms, such as vomiting and diarrhea, can create a serious medical condition, and it is clear from the record at some point Decedent's medical condition became critical, and she needed urgent medical care. Courts have held that a "serious medical need exists when an inmate shows obvious signs of medical distress and directly communicates that distress to correctional officers." *Troupe*, 143 F.4th at 970 (citing *Gordon ex. rel. Gordon v. Frank*, 454 F.3d 858, 862–63 (8th Cir. 2006) (denying qualified immunity to officers who knew inmate was on high observation for heart disease and complained of chest pain and trouble breathing); *see also Plemmons v. Roberts*, 439 F.3d 818, 824 (8th Cir. 2006) (denying qualified immunity to

officers when heart patient inmate was experiencing "classic heart attack symptoms"); *Olson v. Bloomberg*, 339 F.3d 730, 736 (8th Cir. 2003) (finding deliberate indifference by officers who ignored direct statement by inmate of his intention to commit suicide); *Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001) (finding deliberate indifference by officers who failed to perform CPR on inmate they knew had collapsed)). "But deliberate indifference claims are not to be evaluated in hindsight, *Jones v. Minnesota Department of Corrections*, 512 F.3d 478, 483 (8th Cir. 2008), and liability is not established because the condition resulted in death. [*Grayson v. Ross*, 454 F.3d 802, 807 (8th Cir. 2006)]." *Starks*, 2024 WL 940410, at *9.

Although Individual Defendants attempt to rely upon the EMT evaluations of Decedent in the early evening on February 8 to deflect their exposure to liability,[6] the Court finds this evidence insufficient. Admittedly, "[t]he law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002); *see also Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011) ("Prison officials lacking medical expertise are entitled to rely on the opinions of medical staff regarding inmate diagnosis and the decision of whether to refer the inmate to outside doctors or dentists."); *Drake et rel Cotton v. Koss*, (8th Cir. 2006) (jailers could not be held liable for psychiatrist's determination that detainee was not suicidal). "However, officials are not entitled to rely on the recommendation of medical personnel when the medical decision was made without all relevant facts being known or when the reliance is not reasonable." *Robinson v. Otwell*, No. 4:23-CV-04042-SOH-CDC, 2024 WL 5403689, at *10 (W.D. Ark. Aug. 26, 2024), *report and recommendation adopted*, No. 4:23-CV-4042, 2025 WL 478198 (W.D.

---

[6] Under Eighth Circuit precedent, "[v]ideos of an incident are necessarily embraced by the pleadings, and [the Court] will consider the videos here." *Ching as Tr. for Jordan v. City of Minneapolis*, 73 F.4th 617, 621 (8th Cir. 2023)

Ark. Feb. 12, 2025) (citing *McRaven v. Sanders*, 577 F.3d 974, 981 (8th Cir. 2009) (officers not entitled to rely on the recommendation of a nurse who did not possess all relevant information); *McRaven v. Sanders*, 577 F.3d 974, 981 (8th Cir. 2009) (jail officials with relevant personal knowledge about the inmate's condition, knowledge which the medical personnel did not have, makes the official's reliance on medical personnels' decisions not objectively reasonable)).

Here, EMTs warned the Individual Defendants to keep a close eye on Decedent. A reasonable jail official "would have understood that ignoring ... complaints about receiving deficient medical care contravened clearly established principles of Eighth Amendment jurisprudence." *Langford v. Norris*, 614 F.3d 445, 462 (8th Cir. 2010). Thus, the Individual Defendants cannot completely abdicate their responsibility to provide medical care based upon their reliance on EMT Defendants' hours-prior examination. Notably, Decedent made the Individual Defendants aware that she was experiencing a serious medical need, that she was in obvious medical distress, and that she was suffering from heroin withdrawal, yet Individual Defendants did not seek medical assistance for her. Given that the case is in its preliminary stages, the Court finds these general allegations are sufficient to allege a cause of action. *See O'Meara for O'Meara v. Heineman*, No. 8:09CV157, 2010 WL 11527152, at *4 (D. Neb. Feb. 17, 2010) ("Because the first amended complaint does not establish immunity on its face, I will deny the motion to dismiss on the ground of qualified immunity. This does not, however, preclude a later motion for summary judgment reasserting qualified immunity."); *Estate of Wondercheck ex rel. Wondercheck v. Nebraska*, No. 4:06CV3087, 2006 WL 2010216, at *3 (D. Neb. July 14, 2006) (denying motion to dismiss based on qualified immunity without prejudice to reassertion in properly supported motion for summary judgment); *Cronin v. Peterson*, 288 F. Supp. 3d 970, 986 (D. Neb. 2018), *aff'd,* 982 F.3d 1187 (8th Cir. 2020).

- 16 -

Nevertheless, liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). With regard to individual defendant liability, damages under § 1983 is personal and "each defendant's conduct must be independently assessed. Section 1983 does not sanction tort by association." *Smith v. City of Minneapolis*, 754 F.3d 541, 547–48 (8th Cir. 2014) (citing *Heartland Acad. Cmty. Church v. Waddle*, 595 F.3d 798, 805–06 (8th Cir. 2010) (citation and internal quotation marks omitted)); *see also S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015)("[T]he doctrine of qualified immunity requires an *individualized* analysis of each officer's alleged conduct."). "Because vicarious liability is inapplicable to ...§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S.at 676; *Davis v. Dawson*, 545 F. Supp. 3d 682, 717 (S.D. Iowa 2021), *aff'd*, 33 F.4th 993 (8th Cir. 2022); *see Starks*, 2024 WL 940410, at *9 (E.D. Mo. Mar. 5, 2024) ("To establish liability for deliberate indifference in this case, the Court must examine, for each of the individual defendants, whether and when it became apparent to them that Mr. Starks had a serious medical need, and what each of the individual defendants did in response."). Thus, the Court must analyze the allegations directed at each Individual Defendant to determine if they are entitled to qualified immunity based on the face of the Second Amended Complaint.

### a. Eddie Robinson

Plaintiffs allege that the impetus behind Decedent's arrest was that she angered Defendant Sergeant Edward "Eddie" Robinson by refusing to act as a confidential informant against the father of her son.  (Am. Compl., ¶¶ 8, 30-31) Plaintiffs allege that the City of Crystal City jail was under the supervision and control of Defendant Robinson but does not identify any

specific actions taken by him to deprive Decedent of medical care. (*Id.*, ¶¶ 179, 185) Without factual enhancement, the naked allegations that Robinson performed "intentional acts and omissions in the denial of medical care" (Am. Compl., ¶ 179) for Decedent are "merely legal conclusions." *Twombly*, 550 U.S. at 564. Speculation regarding Sergeant Robinson's past utilization of Decedent as a confidential informant is not enough to defeat a claim of qualified immunity. *See White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017); *Faulk v. City of St. Louis, Missouri*, 30 F.4th 739, 746 (8th Cir. 2022) (being an officer "in close proximity to Mr. Faulk" insufficient to overcome qualified immunity). Defendants' Motion to Dismiss Robinson in Count II is granted.

### b.  James Link and Curtis Pullen

Defendant Detective Sergeant James Link and Defendant Officer Curtis Pullen were present for Decedent's examination by the EMT Defendants. (Am. Compl., ¶¶ 10, 11, 84) Once the examination was completed, Defendant Link told EMT McGuire, "If she continues to act up, I'll just take her to the hospital later." (*Id.*, ¶ 100) Plaintiffs allege that "Officer Pullen and Sergeant Link's failure to have [Decedent] transported to Jefferson Regional Medical Center, either by police car or ambulance, given her medical complaints and visible symptoms was a clear violation of the City's jail policy for sick or injured inmates. (*Id.*, ¶111) Plaintiffs allege that "Sergeant Link's comment that he would 'take her later by car' further indicates Link's objective knowledge of the seriousness of [Decedent's] medical condition and his deliberate indifference to [her] health, safety and well-being by delaying, and ultimately denying … her right to medical care." (*Id.*, ¶ 113) Plaintiffs state that, instead of obtaining proper medical care, "Officer Pullen escorted [Decedent] back to Cell #4 where she would needlessly suffer throughout the night and following day and then die almost exactly 24 hours later." (*Id.*, ¶ 115)

"Despite their knowledge of [Decedent's] volatile medical condition, neither Defendant Sergeant Link, nor Officer Pullen physically checked on Decedent again throughout the remainder of their shifts."  (*Id*., ¶ 119) Based merely on the pleadings, the Court holds that Plaintiffs' allegations are sufficient to overcome Defendants Pullen and Link's claims of qualified immunity. Plaintiffs allege that Defendants Pullen and Link were aware of Decedent's serious medical condition based upon her visible and worsening symptoms yet they failed to transport her to a hospital or seek other, additional medical treatment.  Defendants' Motion to Dismiss Defendants Pullen and Link as to Count II is denied.

### c.  Kyle Boyer and Timothy Bennett

At approximately 5:30 p.m. on February 8, 2022, Defendant Officer Timothy Bennett opened the cell door and observed Decedent lying on the floor. (Am. Compl., ¶¶ 12, 150) Decedent told Officer Bennett that she was too "dope sick" to go to court and could not get up. *Id*., ¶¶ 151, 155. Officer Bennett left Decedent on the floor of her cell to tell Defendant Sergeant Kyle Boyer, who was the supervisor at that time. (*Id*., ¶ 154) Plaintiffs allege that "Defendant Officer Bennett also failed to follow-up and check on [Decedent] to evaluate her medical condition and made no attempts to obtain medical assistance for [Decedent] after learning that [she] was too ill to get off the floor of her cell and had been vomiting, despite his knowledge and awareness that she was withdrawing from opiates, had been complaining of chest pains and vomiting over the past twenty-four hour period." (*Id*., ¶ 158) Plaintiffs allege that Defendant Boyer likewise did not physically check on Decedent to evaluate her medical condition and made no attempts to obtain medical assistance for her after learning that she was too ill to get off the floor of her cell and had been vomiting, despite his knowledge and awareness that she was

withdrawing from opiates and had been complaining of chest pains and vomiting over the past twenty-four hour period. (Am. Compl., ¶¶ 9, 157)

The Court holds that Plaintiffs' allegations are sufficient to overcome Defendants Boyer and Bennett's claims of qualified immunity. Plaintiffs allege that Defendants Boyer and Bennett were aware of Decedent's serious medical condition based upon her visible and worsening symptoms yet they failed to transport her to a hospital or seek other, additional medical treatment. Defendants' Motion to Dismiss Defendants Boyer and Bennett as to Count II is denied.

### d.  Jeff Price

Plaintiffs allege that Defendant Dispatcher Jeff Price was on duty the morning of February 9, but failed to summon medical attention despite Decedent's obvious pleas for help. (Am. Compl., ¶¶ 13, 121) Plaintiffs do not provide any other allegations regarding Defendant Price's knowledge of her serious medical illness or his responsibilities as a dispatcher. The Court grants Defendants' Motion to Dismiss Jeff Price as to Count II because the factual allegations are insufficient to overcome his claim for qualified immunity.

### e.  Kristina Long

Plaintiffs allege that Defendant Dispatcher Kristina Long was the Dispatcher on duty after 6:00 pm on February 9, and was required to monitor Decedent in her cell from the room control video feed. (Am. Compl., ¶¶ 14, 165) Plaintiffs allege that Defendant Long was monitoring Decedent just prior to her death yet failed to seek medical help on her behalf, despite her repeated vomiting, ill appearance, and cries for help. (*Id*, ¶¶ 165, 166) Given that the case

only recently commenced, the Court holds that Plaintiffs' allegations are sufficient to overcome Defendant Long's claim of qualified immunity. Plaintiffs allege that Defendant Long had a duty to monitor Decedent but failed to seek help despite her obvious serious medical condition. The Court denies the Motion to Dismiss Count II as to Defendant Long.

### f.  Kathy Forrester and Brittany Meyer

Plaintiffs allege that Defendants Crystal City Dispatchers Kathy Forrester and Brittany Meyer were both on duty throughout the day of February 9, 2022, and were required by Crystal City Jail policy to monitor Decedent from the control room via the Cell 4 camera by both video and audio, yet neither Forrester nor Meyer obtained medical assistance for Decedent despite her severe medical condition. (Am. Compl., ¶¶ 15, 16, 148, 149) Plaintiffs allege that Defendants Forrester and Meyer were monitoring Decedent when her illness became more serious yet failed to seek medical help on her behalf. At this early stage of litigation, the Court holds that Plaintiffs' allegations are sufficient to overcome Defendants Forrester and Meyer's claims of qualified immunity. Plaintiffs allege that Defendants Forrester and Meyer had a duty to monitor Decedent but failed to seek help despite her obvious serious medical condition. The Court denies the Motion to Dismiss Count II as to Defendants Forrester and Meyer.

### C.  Count III against Individual Defendants

Plaintiffs maintain that the Individual Defendants were aware that Decedent was suffering from a serious and obvious medical condition, yet they conspired and reached a mutual understanding to withhold medical treatment from Decedent, resulting in her "lost chance for survival[.]" (Am. Comp., ¶ 186) Specifically, Plaintiffs allege,

> Officer Pullens' repeated apologies to McGuire and Dixon, combined with McGuire's questionable statement to both Link and Pullen to signal the conclusion of JPAD's medical assessment and their refusal to transport Kimberly –"Are you good with that"— and Pullen and Link's affirmative response; followed by Sergeant Link's statement that he "would take Kimberly later by car" if she continued to act up, when taken together, indicates that Crystal City Police Department and JPAD officers conspired together to prevent or otherwise delay Kimberly's access to medical care despite her obvious and sufficiently clear serious medical condition under the circumstances.

(Am. Compl., ¶ 110) Plaintiffs maintain that they have adequately pleaded civil conspiracy claim under Eighth Circuit precedent. (ECF No. 59 at 9-10)

Defendants contend that Plaintiffs have not shown a meeting of the minds. (ECF No. 54 at 10-11) Defendants assert that the question, "Are you good with that?" is not a meeting of the minds "regarding those present for the evaluation, let alone for every other Defendant." (ECF No. 54 at 11) Defendants state that "[t]o find that law enforcement being 'good with' an EM[T] assessment constitutes a civil conspiracy capable of violating a pre-trial detainee's Fourteenth Amendment right was not clearly established on February 8, 2022, and is contradicted by precedent establishing law enforcement may rely on medical determinations of medical professionals." (ECF No. 54 at 11) Defendants further maintain that qualified immunity bars such claims based upon the lack of any underlying constitutional violation. *Id*. (citing *Ryno v. City of Waynesville*, 58 F.4th 995, 1006 (8th Cir. 2023)). Further, the Individual Defendants assert they are entitled to qualified immunity as the law was not clearly established that the City could conspire with and among its own agents. (ECF No. 54 at 12 (citing *Faulk v. City of St. Louis, Missouri*, 30 F.4th 739, 750 (8th Cir. 2022))

To state a claim for civil conspiracy claims under Section 1983 require plaintiffs must allege:

> "(1) that the defendant[s] conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act

> in furtherance of the conspiracy; and (3) that the overt act injured [him]." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir.2008). "[T]he plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement. [The plaintiff] can satisfy this burden by 'pointing to at least some facts which would suggest [the defendants] "reached an understanding" to violate [his] rights.'" *City of Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir.1989) (alterations omitted) (quoting N*elson v. City of McGehee*, 876 F.2d 56, 59 (8th Cir.1989) )."

*Boneberger v. St. Louis Metro. Police Dep't.*, 810 F.3d 1103, 1109 (8th Cir. 2016); *see also White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008); *Askew v. Millerd,* 191 F.3d 953, 957 (8th Cir.1999)). The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege to prevail on a § 1983 civil conspiracy claim. *Id.*

The Court holds that Plaintiffs have not alleged a meeting of the minds for a civil conspiracy to violate Decedent's constitutional rights. A conspiracy claim "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Faulk*, 30 F.4th at 748. Plaintiffs reference a single question of "Are you good with that?" as the basis for alleging a meeting of the minds on behalf of all Defendants. The Court finds this question to be insufficient to demonstrate a meeting of the minds of Defendants to violate Decedent's constitutional rights and dismisses Count III against all Defendants. Defendants also are entitled to qualified immunity on this claim because Plaintiffs have not alleged a violation of a clearly established right. *See Faulk*, 30 F.4th at 748 (citing *Boxill v. O'Grady*, 935 F.3d 510, 519 (6th Cir. 2019); *Redd v. Nolan*, 663 F.3d 287, 292 (7th Cir. 2011)).

### D. Count IV against Individual Defendants Edward Robinson, Kyle Boyer, James Link, Curtis Pullen Timothy Bennett, Jeff Price, Kristina Long, Kathy Forester, and Brittany Meyer

Plaintiffs allege that Individual Defendants were aware that Decedent was suffering from a serious, obvious medical condition and they had the opportunity to assist Decedent to contact

their superiors within the Police Department to help Decedent but did not. (Am. Compl., ¶¶ 190-91) In the Memorandum in Support of their Motion to Dismiss, Defendants argue that Plaintiffs' failure to intercede claim does not state a claim because it is not a recognized cause of action outside of the excessive force context. (ECF No. 54 at 12)

In their response, Plaintiffs contend that Defendants' attempt to limit "failure to intercede" claims to only excessive use of force claims is a "distinction without a difference." (ECF No. 59 at 10) Plaintiffs concede that the adverse case law limiting failure to intercede causes of action to only excessive force claims but argue that such reasoning is equally applicable where there is a denial or delay in providing medical care to a serious medical need. (ECF No. 59 at 10) That is, Plaintiffs contend it "would make little to no sense to say that an officer who is aware that another officer is violating that right does not have a duty to intervene and prohibit the unconstitutional conduct." (ECF No. 59 at 10)

"[T]he Eighth Circuit has declined to extend a duty to intervene to prevent constitutional violations, other than for violations of excessive force." *Aunhkhotep v. Kopfensteiner*, No. 4:23 CV 540 RWS, 2025 WL 40757, at *9, n.6 (E.D. Mo. Jan. 7, 2025) (citing *Hess v. Ables*, 714 F.3d 1048, 1052 (8th Cir. 2013) ("As an initial matter, we recently held that, outside of the excessive force context, there is no clearly established law regarding a duty to intervene to prevent constitutional violations."); *see also Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012) ("A law enforcement officer who knows another officer is using excessive force has a duty to intervene .... We have not recognized a duty to intervene to prevent other constitutional violations.")). Because there is no clearly established law regarding a law enforcement officer's duty to intervene outside of the excessive force context, Individual Defendants are entitled to qualified immunity on Plaintiffs' claim for failure to intervene regarding a serious medical need.

*See Kavanaugh v. Edwards*, Case No. 4:19CV3256 MTS, 2023 WL 2078534, at *3 (E.D. Mo. Feb. 17, 2023); *Irons v. Neske*, No. 4:21 CV 293 RWS, 2021 WL 4191614, at *6 (E.D. Mo. Sept. 15, 2021) (citing *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012) ("As of 2012, the Eighth Circuit had not recognized a duty to intervene to prevent constitutional violations other than the use of excessive force.") Based upon the foregoing, the Court grants Defendants' Motion to Dismiss as to Count IV.

III. **Defendants Greg Maguire and Andy Dixon's [EMT Defendants] Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 51)**

A. **Qualified Immunity**

EMT Defendants contend that Plaintiff's Second Amended Complaint against them should be dismissed because EMT Defendants are entitled to qualified immunity. Initially, EMT Defendants argue that they are "presumptively entitled to qualified immunity on the face of the Complaint" because of their employment with the "Joachim-Plattin Ambulance District, a political subdivision located in Jefferson County, Missouri and pursuant to R.S.Mo. § 190.105." (ECF No. 52 at 10) Presumably, EMT Defendants are confusing qualified immunity with sovereign immunity. The Eleventh Amendment recognizes sovereign immunity, which bars individuals from bringing suites for damages against nonconsenting states in federal courts. *Thomas v. St. Louis Bd. Of Police Com'rs.*, 447 F.3d 1082, 1084 (8th Cir. 2006). "Eleventh Amendment immunity also extends to arms of the state." *Davis v. Adair Cnty. Ambulance Dist.*, No. 2:23CV22 HEA, 2024 WL 1328247, at *2 (E.D. Mo. Mar. 28, 2024). "As a result, when determining whether a particular agency is an arm of the state, the Court must consider both 'the agency's degree of autonomy and control over its own affairs and, more importantly, whether a money judgment against the agency will be paid with state funds." *Davis*, 2024 WL 1328247, at

*2 (quoting *Thomas*, 447 F.3d at 1084). Here, EMT Defendants' Motion does not establish the Joachim-Plattin Ambulance District is an arm of the State that is entitled to Eleventh Amendment or sovereign immunity so the Court denies Defendants' Motion to Dismiss as to EMT Defendants based upon sovereign immunity. *Davis*, 2024 WL 1328247, at *2.

### B. Count V: EMT Defendants' Deliberate Indifference to an Objectively Serious Medical Condition

EMT Defendants also claim they are entitled to qualified immunity because their conduct did not violate a clearly established constitutional right. (ECF No. 52 at 11) EMT Defendants note that they evaluated Decedent's medical condition on February 8, 2022, and found her to be stable at the time of the examination. (ECF No. 56 at 12). Nevertheless, EMT Defendants told jail staff that they may need to take Decedent to the hospital if her symptoms continued or worsened. (ECF No. 52 at 12) Likewise, EMT Defendants advised jail staff to do a fit for confinement check, notwithstanding their evaluation. (ECF No. 52 at 12) Further, EMT Defendants contend that Decedent's medical condition was not overtly serious at the time, such that her heroin withdrawal did not present a sufficiently serious medical need that would implicate a violation of her constitutional rights. (ECF No. 52 at 12-13)

Further, even assuming that Decedent's heroin withdrawal did present a serious medical need at the time of EMT Defendants' evaluation, EMT Defendants maintain that Plaintiffs have not alleged that EMT Defendants were deliberately indifferent to Decedent's serious medical needs. EMT Defendants note that they performed an examination of Decedent and, while finding her blood pressure to be slightly elevated, found her heart healthy. EMT Defendants emphasize, however, that they recommended that jail officials perform a fit for confinement check and they promised to transport Decedent to the hospital if her condition continued. (ECF No. 52 at 13) Thus, EMT Defendants argue that their conduct, as alleged and as shown on jailhouse video, did

not rise to the level of criminal recklessness to support a claim of deliberate indifference. (ECF No. 52 at 14) Defendants emphasize that any discrepancy between Decedent's measured blood pressure and the one recorded is irrelevant. (ECF No. 61 at 4) Both blood pressure readings were elevated and maintain that any discrepancy was a typographical error, not indicative of deliberate indifference. Instead of being indifferent, Defendants claim that their "actions show they were engaged and evaluated Decedent's condition which informed their conclusions and recommendation." (ECF No. 61 at 4)

In support of their deliberate indifference claim, Plaintiffs note that Decedent's blood pressure reading taken at the jail was 170/100 but it was recorded as 160/90 in the paramedic report. (ECF No. 59 at 10) Plaintiffs infer a nefarious intent to interfere with Decedent's constitutional rights based upon the inaccurate information recorded and by leaving her treatment to the "whims of the Crystal City Jail[.]" (ECF No. 59 at 11)

The Court finds that EMT Defendants are entitled to qualified immunity as to Plaintiffs' claims in Count V. EMT Defendants noted Decedent's raised blood pressure but otherwise found her condition to be stable. However, EMT Defendants suggested that jail personnel evaluate Decedent for fitness for confinement and the parties discussed officers taking Decedent to the hospital if Decedent's condition worsened. Although they argue EMT Defendants should have taken Decedent to the hospital for additional medical treatment, Plaintiffs have not alleged any facts to support a finding that EMT Defendants were deliberately indifferent to Decedent's medical needs. Plaintiffs only identify EMT Defendant's transcription error as to Decedent's blood pressure, which is not alleged to have been a significant medical difference. The Court grants EMT Defendants' Motion to Dismiss Count V based upon qualified immunity.

### C. Count VI: EMT Defendants' Conspiracy to Violate Decedent's Constitutional Rights

Initially, EMT Defendants argue that they could not have been part of a conspiracy to violated Decedent's constitutional rights if the Court finds that Plaintiffs have not alleged an underlining constitutional violation by the EMT Defendants. Further, EMT Defendants assert that Plaintiffs' conspiracy claim fails because they have not pleaded facts which would demonstrate that EMT Defendants had a meeting of the minds to violate Decedent's constitutional rights. (ECF No. 52 at 14) Notably, EMT Defendants were told by jail staff that they would take Decedent to the hospital if her condition continued or worsened. *Id*. EMT Defendants also told the jail staff that Decedent may require a fit for confinement check. *Id*. Thus, EMT Defendants maintain that there could not have been a meeting of the minds, given that jail officials did not follow the EMT Defendants' advice and instruction. *Id*.

Plaintiffs do not appear to address this issue as to the EMT Defendants in their Consolidated Memorandum of Law in Opposition to All Defendants' Motion to Dismiss (ECF No. 59) The Court again finds that Plaintiffs' Second Amended Complaint does not allege a claim for civil conspiracy. As previously discussed, Plaintiffs do not show a meeting of the minds between EMT Defendants and jail staff since the staff failed to obtain either a fit for confinement check or to take her to the hospital when Decedent's condition worsened. As there are no allegations that support a meeting of the minds, the Court grants EMT Defendant's Motion to Dismiss Count VII against them.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff The Estate of Kimberly Kertz is **DISMISSED** for lack of standing.

**IT IS FURTHER ORDERED** that Defendants Greg Maguire and Andy Dixon's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 51) is **GRANTED**. Counts V and VI are dismissed with prejudice.

**IT IS FINALLY ORDERED** that Crystal City Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 53) is **GRANTED**, in part, and **DENIED**, in part, as set forth herein. The claims in Count II are dismissed as to Defendants Robinson and Price. Counts III and IV are dismissed as to all Defendants. In all other respects, the Motion (ECF No. 53) is denied.

Dated this 12th day of November, 2025.

**JOSEPH S. DUEKER**
**UNITED STATES MAGISTRATE JUDGE**